## JOHN FITZSIMMONS V. HIRAM B. CHAPMAN.

### *Damages—Loss of Speculative Profits.*

Damages are not recoverable for the loss of purely speculative benefits that can not be estimated by any certain standard. So *held* where the plaintiff, on the strength of the defendant's representations, had paid a subscription to a bonus to induce a manufacturing firm to settle in the town where they lived, and the firm turned out to be insolvent and none of the advantages accrued that had been looked for by the plaintiff, such as increase in population, or rise in the value of real estate.

Error to Hillsdale. Submitted June 6. Decided June 20.

TRESPASS ON THE CASE for damages arising from the alleged false and fraudulent representations of a party other than the persons benefited. The case was tried before a jury, who gave damages to the plaintiff, but the court awarded costs to the defendant, and the plaintiff, excepting thereto, brought up the case on bill of exceptions.

*E. L. & M. B. Koon, A. St. John* and *J. F. Fitzsimmons* (on brief) for plaintiff in error, cited 1 Hilliard on Torts, pp. 2–15; *Pasley v. Freeman*, 3 T. R., 51; *Green v. Bryant*, 2 Ga., 66; *Longmeid v. Holliday*, 6 Exch., 761; *Beebe v. Knapp*, 28 Mich., 53.

*A. Dickerman* (on brief) for defendant in error.

MARSTON, J. Plaintiff in error commenced this action

to recover damages on account of certain alleged false and fraudulent representations made by the defendant, whereby the plaintiff was induced to subscribe and pay six hundred dollars in money and materials, towards a bonus of $20,000 to be raised by the citizens of Reading and paid to Colby Brothers & Co., a manufacturing firm of Vermont, as an inducement for them to remove their business to and carry on the same at Reading. The alleged representations made were, that defendant had been to Waterbury, Vermont, and there ascertained and knew the financial standing and responsibility of said company; that the company was then doing and carrying on a large business as manufacturers of clothes wringers, washers, children's carriages and sleighs; that their business was a profitable one; that for some years previously they had declared large dividends, to-wit: 28 per cent. profit on the dollar for their capital invested; that they had a paid up invested and working cash capital of $75,000 to $100,000 over and above their indebtedness and liabilities, and that he, defendant, knew they were good and responsible business men; that if plaintiff and others would raise $20,000 in money and material by subscription as a gift to said company they would remove their business from Waterbury to Reading and there carry on the same; that they would bring their said capital and funds with them and permanently invest the same at Reading, which would enhance and increase the value of all property therein, and would increase and enhance the value of the plaintiff's real estate to an amount far exceeding his subscription, and would also increase the number of inhabitants and the amount of general business done and transacted at Reading; that as an inducement and in order to have plaintiff subscribe, he, the defendant, did subscribe and agree to pay towards said fund the sum of two thousand dollars in money; that plaintiff, relying upon these representations and upon the subscription made by defendant to be paid in money, subscribed and paid the amount of his subscription; that he afterwards ascertained that defendant did not pay his said subscription in money, but only paid some $1,600 in lots at Reading at exorbitant prices,—the money which he

apparently paid having been furnished him by said Colby company under a previous agreement entered into between the president of said company and said defendant; that although the said company did remove to Reading, yet that it was insolvent and did not bring the amount of capital represented; that it brought but little if any capital; that it had not been doing a profitable business at Waterbury, and did not have the capital represented invested there, and had not declared any dividends, and that the removal of said company to Reading had not enhanced the value of plaintiff's real estate, and had not increased the number of inhabitants at Reading, &c., to the plaintiff's damage. A question was also raised as to the company having sold out and given up a part of its business at Waterbury, but as plaintiff previous to his subscription having been made was informed by the president of the company of this fact at a public meeting held in Reading, we need not refer to it again.

Had this action been brought to recover from plaintiff the amount of his subscription, and he had set up these false and fraudulent representations to that action, a very different question would have arisen. And perhaps the question might have been somewhat different had the company not removed any part of its business from Waterbury to Reading, and no farther or other action been taken except the collection of the money. But as the company did remove its business to Reading and commenced business at that place, in buildings erected under their directions from the moneys subscribed, and failed only on account of not having or bringing the amount of capital represented, it would seem clear that any damages which the plaintiff may have sustained thereby would result from his not receiving the full benefits which he otherwise expected and hoped to derive had the representations made proved true. Plaintiff did not expect to receive any direct benefits, either by way of a share in the profits of the company or otherwise from their removal to and success in business at Reading. He took no stock in the company, nor did he invest any capi-

tal therein. He expected that the removal of such a company to Reading would increase the number of inhabitants and the amount of general business transacted there, which would necessarily enhance the value of his own and other property at that place and in the vicinity thereof. This he alleges was the real inducement. Such benefits are purely speculative and imaginative. Undoubtedly benefits such as were expected might to a greater or less extent flow from such a manufacturing establishment, but to what extent, what increase would there be to the population, what to the general business of the place? In consequence of this increased population and business, what advances would be likely to take place in the value of real estate generally and in particular in the value of plaintiff's property? How shall these things be ascertained and determined? It is true the defendant may have represented that the plaintiff would derive benefits from this expected rise in value, far exceeding the amount of his subscription. The plaintiff may have been of like opinion. There could, however, be no certainty in this. It was purely a matter of opinion, and these anticipated speculative profits are but seldom, if ever, realized. All such uncertain, indefinite and fanciful benefits are too remote and unreliable to form any safe basis upon which to estimate damages. They depend upon contingencies, so many, various and uncertain, that it would in fact be impossible to arrive at any definite determination of the actual loss, by any trustworthy method known to the law. Taking the entire case as presented we do not see that the plaintiff has any cause for complaint.

The judgment must be affirmed, with costs.

The other Justices concurred.