SILURIAN MINERAL SPRINGS COMPANY v. KUHN & COMPANY.

FILED JULY 22, 1902. No. 12,057.

Commissioner's opinion, Department No. 2.

1. **Action for Purchase Price: CONSIDERATION: CREATING DEMAND: IN-STRUCTION.** In a suit to recover the purchase price of goods sold and delivered, where the vendor agreed at the time of the sale to create a demand for them by advertising, and only partially complied with such agreement, it is error to charge the jury that plaintiff is not entitled to recover anything for the goods.

2. **Damages: ANTICIPATED PROFITS.** Damages in the nature of anticipated profits on conjectured, expected or hoped-for sales, can not be recovered. Such damages are too speculative, remote and consequential; they lack the element of certainty necessary to authorize a recovery therefor.

3. **Evidence.** Evidence examined, and *held* not sufficient to sustain the verdict.

ERROR from the district court for Douglas county. Tried below before BAXTER, J. *Reversed.*

*Crane, Crane & Erwin* and *J. J. Boucher,* for plaintiff in error.

*A. C. Troup* and *Howard H. Baldrige, contra.*

BARNES, C.

This action was commenced in the district court for Douglas county by the plaintiff in error to recover $127.50 from the defendant in error on account for certain mineral waters sold and delivered to the defendant by the plaintiff. The petition was in the ordinary form to recover on account for goods sold and delivered at an agreed price. The defendant by its answer admitted the sale and delivery of the goods but denied that it was indebted to the plaintiff in any sum whatever. For a further defense it was alleged in the answer that the plaintiff, at the time the goods were ordered, agreed to do certain advertising in order to create a market and a demand for the mineral waters so sold to the defendant, which advertising was to be done by visiting physicians of Omaha, sending them letters, blotters and cards setting forth the medicinal properties of the waters, etc.; and their attention was to be called to the fact that said waters could be had at the defendant's drug store. It was further alleged that the defendant furnished plaintiff the names of the leading physicians of Omaha for that purpose; that plaintiff only partially complied with its contract in that behalf; and that by reason of such failure to perform its contract on the part of plaintiff, defendant has only been able to dispose of and sell four cases of said mineral water at the price of $20, and has been unable to sell and dispose of the rest of the consignment; that had plaintiff kept and performed its contract defendant could and would have sold seventeen cases of said mineral water still on its hands at $8.50 per case, or $144.50, and the remaining four cases at $4.50 per case, which was the reasonable market price therefor, and on the whole consignment it would have made a profit of $51, which represents its damages for the failure of the

plaintiff to keep and perform its contract, and for which sum it prayed judgment against the plaintiff. It was further alleged in the answer that defendant had offered to return all of the said mineral water still in its possession, and unsold, to the plaintiff, and pay it the sum of $20 in settlement and satisfaction of its claim, that it was still ready and willing to do so, and that plaintiff had refused to accept the same. To this answer plaintiff replied by a general denial. On these issues the cause was tried to a jury, and on the plaintiff's motion the court directed a verdict for the plaintiff for the full amount of its claim, and said verdict was accordingly rendered. Afterwards, on defendant's motion for a new trial, the court set the verdict aside and granted a new trial; and that order of the court is assigned as error herein. Thereupon the cause was tried again to a jury, and after being submitted under written instructions, the jury returned a verdict as follows (omitting title):

"We, the jury duly impaneled and sworn to try the issue joined between the said parties, do find for the said defendant, and do assess its damages against said plaintiff at $——.          J. W. MARTIN, *Foreman.*

"We, the jury, do find that defendant's profits would have amounted to the sum of $49.50; that he has already received the sum of $30.00 from the proceeds of sales of mineral water in question, subtracting that amount from net amount of profits, namely, $49.50, leaving a balance of $19.50 due the defendant, which amount we consider the mineral water now in the possession of Kuhn & Co. to be worth.          J. W. MARTIN, *Foreman.*"

The court thereupon rendered the following judgment:

"It is therefore considered by the court that the above entitled action be, and the same is hereby dismissed; and that the defendant go hence without day and recover of and from the said plaintiff its costs herein expended taxed at $——, for which execution is hereby awarded."

A motion for a new trial was filed and overruled, and

from the said judgment and proceedings plaintiff prosecutes error to this court.

1. The plaintiff claims that the court erred in giving its fourth instruction to the jury, which is as follows: "The jury are instructed that they are first to consider and determine what the contract between the plaintiff and defendant was, and what, if any, were the inducements which led the defendant to make the contract with the plaintiff, and if you find from the evidence that the defendant made the contract as alleged in the petition by plaintiff, but that the defendant was induced to make the contract under the express agreement on the part of plaintiff, that the plaintiff by and through his agents would create a market for said goods by frequently visiting personally the physicians of the city of Omaha, referred to in the testimony, with the view of inducing them to prescribe said mineral water for their various patients and informing them that the same was kept in stock at the defendant's store, and if you further find that said agents and representatives of the plaintiff failed to personally visit the said physicians in the city of Omaha, referred to in the testimony, with the view of inducing them to prescribe said mineral water for their various patients, and failed on its part to comply with any material representations which you may find were made by the agents of the plaintiff company to the defendant, and which induced the defendant to enter into said contract, then, in that case, the plaintiff can not recover from the defendant upon its said contract." By this instruction, the jury were told in effect, that although defendant had ordered the mineral water at the agreed price as set forth in the petition, and received, retained and sold a portion of it, yet if the plaintiff had failed to carry out its agreement to advertise the same by the means and in the manner alleged in the answer, then plaintiff could recover nothing on the claim sued on. The learned trial judge certainly was mistaken as to the law of this case. Under the pleadings and the evidence the plaintiff was entitled to recover the amount of the contract price of the goods sold and de-

livered. If the answer stated a defense, it was in the nature of a counter-claim, and at most the jury would only be allowed to deduct from the agreed price of the mineral water the damages which they might find defendant had sustained by reason of plaintiff's failure to carry out its agreement made at the time this consignment was ordered. We hold that the giving of this instruction was reversible error.

2. Plaintiff alleges that the court erred in giving its sixth instruction to the jury, which is as follows: "The jury is further instructed, if it finds from the evidence that the plaintiff has failed to comply with its contract or failed to comply with the material promises or inducements which you may find induced and led the defendant to enter into the contract, plaintiff can not recover upon its contract; and in such case the defendant is entitled to recover from the plaintiff the profits which the defendant would have made if the plaintiff had complied with all the inducements and agreements on its part to be performed, but, inasmuch as the defendant has in its possession some of the cases of mineral water sent by plaintiff to defendant, you are to inquire what, if anything, is the value of the mineral water now on hand in the possession of the defendant, and how much, if anything, has been realized by the defendant on the sale of mineral water during the time plaintiff was carrying out its contract; add these amounts and from this sum you must subtract; and if you find the defendant's damages exceed in amount these sums, then the defendant is entitled to a verdict for the difference, provided you find for the defendant. If on the contrary the amount realized by the defendant on the sale of the mineral water during the time plaintiff was engaged in carrying out its contract, added to the value, if anything, of the mineral water now in possession of the defendant exceeds the profit which the defendant would have made on the sale of mineral water if the plaintiff carried out its contract, then you should give a verdict for plaintiff for such excess." We can not approve of this instruction. By it the jury

were told that the defendant was entitled to recover from the plaintiff, as damages, the profits which the defendant would have made if plaintiff had complied with all of the inducements and agreements on its part to be performed. This, of course, must have been given upon the assumption that defendant would have at once sold all of the mineral water if plaintiff had complied with the agreement to advertise the same. This instruction, in effect, would establish the rule that anticipated profits on probable or conjectural sales may be recovered and set off against the purchase price of the goods sold and delivered. It is a well established principle that in certain cases profits may be recovered. A leading case announcing that rule is *Messmore v. New York Shot & Lead Co.*, 40 N. Y., 422. In that case, the plaintiff, having contracted to sell to the state of Ohio a large quantity of bullets of a certain quality and at a fixed price, deliverable at Columbus, Ohio, made a contract with the defendant at New York, by which the latter agreed to manufacture and deliver to him the same quantity and quality of bullets; and at the time of making it, he informed the defendant of his agreement with the state of Ohio, and that he was contracting with him for the bullets in order to carry out that agreement. It was held that, the defendant failing to deliver, the plaintiff could recover the difference between the price the plaintiff was to receive and the price at which the defendant was to furnish the bullets. In that case it will be seen that the profits were fixed, and susceptible of exact computation, and that the defendant contracted with full knowledge of and in direct reference to them. This case has been generally followed by the courts, and there is no longer any doubt that profits may be recovered, provided they are within the established rules permitting consequential damages, and can be proved with a reasonable degree of certainty. *Wittenberg v. Mollyneaux*, 55 Nebr., 430. The case at bar does not come within this rule, but rather falls within the rule announced in *French v. Ramge*, 2 Nebr., 254. The anticipated profits in this case depend upon the

assumption that if plaintiff had exercised more diligence in advertising or puffing the mineral water in question, defendant would have sold all of it, and would have thus realized the profits arising from such sale. It must be observed that no time is fixed within which the advertising was to be done, or in which it was anticipated or claimed the sales would have been or were to be completed. At best it is but a mere conjecture that the consignment would have all been sold within a short time, even if a fortune had been spent in advertising its medicinal properties. The amount of sales would depend upon the number of customers, and they could not be found or expected to purchase unless their ailments required the use of the water. Again, it is probable that no amount of advertising would have induced the physicians of Omaha to prescribe these waters for their patients. They might have thought they possessed other and better remedies. A recovery can not be based on mere matters of speculation or conjecture. The damages defined in the instruction complained of are too remote, consequential and uncertain. The following cases state the rule for the recovery of anticipated profits. *Denver, T. & G. R. Co. v. Hutchins,* 31 Nebr., 572; *Holmes v. Boydston,* 1 Nebr., 346; *Sycamore Co. v. Sturm,* 13 Nebr., 210; *Bridges v. Lanham,* 14 Nebr., 369. We are constrained to hold that the court erred in giving this instruction.

3. It is urged by the plaintiff that the evidence is not sufficient to sustain the verdict. Upon the question of the terms of the agreement, Kuhn, the president of defendant company, testified as follows: "A gentleman came in and told me he represented the Silurian Mineral Springs Company of Waukesha, Wisconsin; that he had a water in his possession similar to Bathida water, which was well known in the market, but which had added to it lithia and other chemicals that altered its effect on the system in such a way that it was adapted for other diseases which the Bathida water was not used for; and he wanted to sell me a car-load. He wanted to sell a car-load, and I told him

I would not think for a minute of buying a car-load of the water, and then he says we are going to make a market and going to create a demand for this water in this market, and it don't make any difference how much you buy the first time, as the work we propose to do here will cause you to buy more than once this summer, and we hope the second order you give us will be in car-load lots. He stated what he would do. Among other things he specifically agreed to do was: He stated he would do specific things; among other things, he would write a letter each week to each physician whose names I would furnish him,—I got that a little bit mixed,—he would write each physician a letter each week during the summer and at various times he would send postal cards reminding them of the uses of the water, and would send them blotters also, and on all literature he would have the name of Kuhn & Company, sole agents; and that he would sell no one else in this city the water, but would turn all inquiries and orders over to Kuhn & Company; that he would also go around and personally visit each and every one of the physicians whose names I would furnish him, and see them and tell them of the virtues of the water, and give them instances of its use, where it had been tried, and describe to them what additions to the natural water had been made, and that he would also furnish carbonate water and plain water as samples to give the physicians, and would also inform the physicians that in the course of a few days the water would be at my store where they could call and get it. He made other representations, but those were the specific ones he agreed to do—stated that he would do." It will thus be seen that the evidence does not sustain the allegations of the answer. It is not shown that there was any definite time fixed or contemplated by the parties within which the advertising, or puffing of the mineral water was to be completed, nor how much of such advertising was to be done; neither was there any time limit in which defendant was supposed to sell all of the water. It is shown by the testimony that plaintiff partially carried out its agreement to

advertise, and that defendant is still selling the water, from time to time, as customers present themselves. Indeed, the evidence shows that between the time of the first and the second trial of this case, defendant sold several cases of the water. Without doubt, defendant in time will sell and dispose of all of it. It is stated in defendant's brief that Kuhn testified that if the plaintiff had carried out its agreement he would have sold the whole consignment, and we are cited to pages 18 to 20 of the bill of exceptions for such evidence. We do not so understand the testimony. We quote it as follows:

"He said that $9 would be a proper price; and I said that we could not get $9, for other water was being sold for $8.50, and that price was as much as we could get, or ask for it, and $4.50 a case for half gallon plain water was as much as we could get for it."

Q. What did he say in regard to that?

A. He just simply thought if the other waters were sold for that price we could not expect to get more for Vitalozed Lithia.

Q. Now, are you able to state whether this water could have been sold at that price if they had advertised it as they agreed to do; that is, if they had written letters to these physicians and called upon them as they said they would call upon them and sent this printed matter and reading matter to them, and used their efforts to advertise the water as they agreed to advertise it?

A. Yes, sir.

Q. State what in your judgment you would have been able to sell this water for if they had created a market for it in the way they agreed to do; that is what would have been the market price of that water in the summer of 1898, if they had made an effort to create a market, which they agreed to do?

A. $192.50 was the total by the case, I might say.

It will be observed that the defendant's witness does not testify that he could or would have sold all of the consignment within any specific time. His evidence, properly con-

strued, shows that if plaintiff had complied with its agreement this water could have been sold at $4.50 a case for half gallon plain water, and that if plaintiff had created a market for the water in the way it agreed to its market price would have been $192.50. The witness does not state that he could or would have sold all of the water during the summer of 1898. Indeed, no one would have ventured to so testify. In the very nature of the transaction, there were so many contingencies, and as we have stated heretofore, so much depends upon speculation and conjecture, that the witness could not consistently make any such positive statement.

We are satisfied that the evidence does not sustain the verdict, and that the judgment of the trial court must be reversed. We do not think we ought to go so far as to hold that the answer does not state any defense to the plaintiff's cause of action. Defendant would be entitled, at least, to recover nominal damages of plaintiff for the breach of its agreement, if such breach were proved. It may be that the answer should be amended and reformed, but that would hardly warrant us in attempting to finally dispose of the case in this court.

For the foregoing reasons, we recommend that the judgment of the district court be reversed and the cause remanded for a new trial.

OLDHAM and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.