PUNTENEY-MITCHELL MANUFACTURING COMPANY v. T. G. NORTHWALL COMPANY.

FILED JANUARY 6, 1904. No. 13,291.

1. **Evidence.** Evidence examined, and *held* sufficient to sustain the finding of the trial court.

2. **Action:** BREACH OF WARRANTY: DAMAGES. In an action to recover the purchase price of cultivators sold by a manufacturer to a jobber in agricultural implements for the express purpose of resale to the trade, the jobber may, on a counterclaim for damages for a breach of warranty, recover the profits on resales actually made and completed, where such profits are fixed, certain and capable of accurate proof, and were evidently contemplated by the parties when the contract was made.

3. **Case Distinguished.** The case of *Silurian Mineral Springs Co. v. Kuhn & Co.*, 65 Neb. 646, distinguished and approved.

ERROR to the district court for Douglas county: GUY R. C. READ, JUDGE. *Affirmed.*

*Thomas D. Crane* and *J. J. Boucher,* for plaintiff in error.

*Thomas W. Blackburn* and *George W. Spurlock,* contra.

BARNES, C.

During the season of 1898 the plaintiff, Punteney-Mitchell Manufacturing Company of Kansas City, Missouri, sold and delivered to the defendant, the T. G. Northwall Company of Omaha, Nebraska, ten Diamond corn cultivators at $10 each, and forty-three Diamond disc cultivators at $15 each. The defendant was a jobber of agricultural implements, and the evidence shows that the goods were

bought for the sole purpose of resale to. retail dealers, which purpose was known to the plaintiff at the time of said purchase and sale. The cultivators were warranted to be first class in quality and construction, and it was represented that they would do the work for which they were intended, as well as any other first class cultivators. It was also understood, at the time the contract was made, that the disc cultivators should be resold to the trade at from $19 to $20 each. A considerable number of these cultivators were, at the defendant's request, shipped direct to retail dealers, while the others were delivered to the defendant at Omaha; and it appears that all of them were resold to retail dealers at $19 each. It was soon discovered that the disc cultivators were defective in material and construction, and would not do the work for which they were designed, and they were all returned to the defendant, who, in turn, tendered back forty-two of them to the plaintiff. The Diamond corn cultivators gave entire satisfaction to the persons purchasing them, and for these the plaintiff was entitled to receive from the defendant the sum of $100. This suit was brought in the district court for Douglas county to recover the full price of all of the cultivators. The defendant, in its answer, alleged a credit of $25.64 on account of an overcharge of freight, which was conceded by the plaintiff. It also pleaded, as a counterclaim, damages to the amount of $35.50 for freight charges, which were agreed upon, and the further sum of $168 loss of profits on the resale of forty-two disc cultivators by reason of a breach of warranty. The case was tried to a jury and resulted in a verdict and judgment for the defendant for $62.40. The plaintiff prosecuted error, and on the hearing in this court the judgment was reversed and the cause remanded for a new trial. *Punteney-Mitchell Mfg. Co. v. Northwall Co.*, 66 Neb. 5. By our former decision, all questions relating to the breach of warranty and the sufficiency of the offer to return the cultivators in question were disposed of, so nothing was left for trial but the question of damages.

47

After the mandate was returned, the cause was again tried in the district court for Douglas county, without the intervention of a jury, and the defendant had judgment for $149.47, from which the plaintiff again prosecutes error.

But one question is presented for our consideration and that is the correct rule of damages to be applied to the facts above stated. The trial court found that "It was expressly understood that the Diamond disc cultivators were to be sold by defendant to retailers at $19 to $20 a cultivator, and the same were so sold and delivered to the retail dealers at the price of $19 each," and the court thereupon held that the defendant was entitled to recover the sum of $4 as his profit on the resale of each of the cultivators. It is now contended by the plaintiff that the evidence does not sustain the finding of the trial court above quoted, and that the profits above mentioned were not a proper element of damages. We will dispose of the first point before we determine the question of the measure of damages.

T. G. Northwall, the president of the defendant company, testified as follows:

Q. You may describe, in your own way, the conversation you had with Mr. Peacock, the agent of the plaintiff, and the time when you had the conversation.

A. My recollection is that it was in January of 1898, early part of January; the exact words of the conversation I could not give; it was in reference to the contract, or the making of a contract with Punteney-Mitchell Manufacturing Company for some disc cultivators and some Diamond listing cultivators; the details were gone over about the work they would do, and the work they would do in comparison with any other first class goods of the same class; also in reference to the selling price, which was agreed on to be from $19 to $20 to the dealer, which was based on the average price of the same class of goods of other make.

Q. How many of these Diamond disc cultivators did your firm sell to the dealers in the spring of 1898?

A. Forty-three.

Q. At what price?

A. $19.  I wish to add that there might possibly have been some sold at $20, but if there were it was some single case; none were sold for less than $19.

Q. And none were bargained to be sold at less than $19?

A. No, sir.

Q. It was stipulated and agreed between you and the Punteney-Mitchell Manufacturing Company that none should be sold for less than $19?

A. It was not provided in the contract; it was gone over the same as is always done with the factory in making a contract with the factory what the goods should be sold at.

Q. There was no contract made except the verbal contract you speak of?

A. No contract made on the price; no.

Q. It was agreed between you and the Punteney-Mitchell Manufacturing Company that you should sell none for less than $19?

A. It was agreed that the price they should be sold at should be $19 or $20.  If we chose to sell for $15 I presume we *could* have done so, or sold for $25.  It was agreed that the profits should be based on $19 to $20.

Q. All these forty-three cultivators which were returned to you were sold for $19 each?

A. They were sold for $19 or more, possibly some went at $20.

This evidence is not disputed or questioned in any manner, and it seems to be sufficient to sustain the finding complained of.

We come now to the question of damages.  It may be stated at the outset, that we are firmly committed to the rule that "Damages in the nature of anticipated profits on conjectured, expected or hoped for sales can not be recovered.  Such damages are too speculative, remote and consequential; they lack the element of certainty necessary to authorize a recovery therefor."  *Silurian Mineral Springs Co. v. Kuhn & Co.*, 65 Neb. 646.  This is our latest expression on this question, and is the result of our holdings in numerous other cases of a like nature.  We approve of

these decisions, and shall not attempt to question the correctness of this rule in the present opinion. We are also committed as firmly to another rule,·that what are sometimes denominated consequential damages, but which were in contemplation of the parties when the, contract was made, may be recovered in an action for a breach of warranty, if they are certain and determinate in their nature or amount, or can be rendered so by evidence, and are directly attributable to the breach of the contract as their cause. This question was before the court in *Burr v. Redhead, Norton, Lathrop Co.,* 52 Neb. 617. In that case the company sold Burr a lot of bicycles and warranted them to be properly made of good material, to be of the highest possible grade, and that they would give the purchasers thereof every satisfaction. They proved to be. of inferior quality, of a poor grade, and failed to give satisfaction. A part of them were sold by Burr to his customers, but were returned on account of their worthless condition. An action was instituted by the company in the county court of York county to recover a balance claimed to be due from Burr on account of such sale. On appeal, in the district court, an answer was filed setting up the warranty and the breach thereof, together with a counterclaim for damages. In this claim there was an item of $100 for loss of profits on the sales of the machines returned by the purchasers because unsatisfactory and defective, and, on motion, this item was stricken out. The case came to this court on error, and on that question the court made use of the following language:

"A portion of the answer referred to loss of profits on 'wheels' which had been purchased of plaintiffs in error and returned by purchasers because defective. This was a proper element of damages, having its origin in the breach of warranty and must have been in contemplation of the parties when the contract was ·made, as a probable consequence of its breach. The court should not have stricken out the portion of the answer in which this claim of damages was made, or excluded the. offered evidential facts of

this claim of damages.   Both this and the claim in relation to repairs were certain in their nature, or could be rendered reasonably so by the evidence, and were also certain in respect to what caused them, hence were proper elements of damages."

In *Russell v. Horn, Brannen & Forsyth Mfg. Co.*, 41 Neb. 567, this question was before the court in another form. The company in that case made a contract with Russell whereby he was to have the exclusive right to sell its manufactured goods in certain territory; another agent of the company sold goods in such territory, and Russell claimed damages in the nature of profits on such sales.   It was held that the measure of damages, because of such sales, was the profits which Russell might, with reasonable certainty, show he was prevented from realizing by reason of the breach of contract.   In *Wittenberg v. Mollyneaux*, 55 Neb. 429, it was held that "A party injured by a breach of contract may recover for gains prevented, provided they are within the established rules permitting consequential damages, and provided they can be proved to a reasonable degree of certainty."

In *Western Union Telegraph Co. v. Wilhelm*, 48 Neb. 910, where, by reason of the failure of the company to deliver a certain telegram, Wilhelm was prevented from consummating the exchange of a piece of land for a stock of goods, and thereby lost the profits he would have made had such exchange been effected, it was held that the telegraph company was liable to him for such profits.   In the body of the opinion we find the following language:

"Since it appears from the evidence that the message delivered to the telegraph company for Wilhelm was never delivered; that by reason of the failure of the telegraph company to deliver the message the exchange of properties was not consummated, and he thereby lost the profits he would have made upon that exchange; and since the evidence warrants the conclusion that had the message been delivered the exchange would have been consummated, we think the evidence sustains the finding that the neglect of

the telegraph company to deliver the message was the proximate cause of the loss and damages sustained."

The same rule was recognized in *Schneider v. Patterson, Murphy & Co.,* 38 Neb. 680. *Thorne v. McVeagh,* 75 Ill. 81, was a case where a lot of hams were sold in Chicago, with a warranty that they were first class in every respect, the purchaser not seeing them, and the seller knowing that they were bought for a customer in Salt Lake City under a contract with the latter. They were shipped by the seller to Salt Lake City for the purchaser. The hams not being of the quality represented the purchaser lost the benefit of his resale. On these facts it was held that he was entitled to recover, among other items, the profits which might be reasonably expected on the resale. In *Griffin v. Colver,* 16 N. Y. 489, it was held that loss of profit not speculative or contingent may be considered in estimating the damages for a breach of contract. This is a leading case on this question, and the opinion fully discusses the general principle, together with the exceptions thereto. In *Schile v. Brokhahus,* 80 N. Y. 614, it was held that the loss of profits consequent upon a trespass is properly allowed as an item of damages, provided they are such as might naturally be expected to follow from the wrongful act, and are certain both as to their nature and their cause. It may be stated as a broad, general rule, that a party injured by a breach of contract is entitled to recover all his damages, including gains prevented as well as loss sustained, subject to the conditions and limitations that it must appear that the profits were reasonably certain to have been realized by performance; that they must have been in the contemplation of the parties when they made the contract, not speculative or contingent, and the loss must appear to have resulted proximately and naturally from the breach. To which may be added that they must not have proceeded from the injured party's own neglect, inattention or mismanagement. Note to *Griffin v. Colver,* reported in 69 Am. Dec. (N. Y.) 718, 725. Indeed this rule was recognized and commented on in *Silurian Mineral Springs Co. v.*

*Kuhn & Co.*, 65 Neb. 646, where we cited and discussed *Messmore v. New York Shot and Lead Co.*, 40 N. Y. 422, and other cases holding the same doctrine, but concluded that the facts in that case brought it within the rule of anticipated profits on conjectured, expected or hoped for sales, rather than profits on completed sales where 'the damages are certain, fixed and capable of proof. In our former opinion in this case it was said:

"The plaintiff knew the purpose for which the goods were bought, and must have known that the carrying out of such purpose would entail certain expenses, and that the alleged defects in all probability would not be discovered until after the delivery of the goods to the defendant's customers."

To this we may add, that it was known by the plaintiff at the time of the purchase and sale that the defendant was a jobber; that the machines would not be sold at retail, but would be sold and delivered to the trade, to wit, to dealers; that they were purchased for the sole purpose of resale, and it having been understood that they were to be resold at an advance over the contract price of $4 each, that sum must have been in the contemplation of both the seller and purchaser as the amount of damage which would be sustained on each machine in case of a breach of the warranty.

It is claimed by the plaintiff that the facts in this case bring it within the rule announced in *Alpha Checkrower Co. v. Bradley & Co.*, 105 Ia. 537, and it is true that as to certain facts the cases seem to be alike; but in that case the machines were not actually resold, and the decision was in fact based on the insufficiency of the answer. In the case at bar all of the cultivators were actually resold, and if they had been of the kind and quality they were represented and warranted to be, the defendant would have received a profit of $4 on each one of them, or $168 as the result of its resales. It had fully earned this profit, and was deprived of it solely because of the breach of the warranty. The measure of damages having been based on the fully completed resales of the cultivators, the amount

thereof being fixed, certain and capable of accurate proof, and evidently within the contemplation of the parties when the contract was made, it follows that the judgment of the district court was right, and we recommend that it be affirmed.

ALBERT and GLANVILLE CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.