PETER O'SHEA, APPELLEE, V. NORTH AMERICAN HOTEL COMPANY ET AL., APPELLANTS.

FILED DECEMBER 8, 1922. No. 22144.

1. **Insurance:** INDEMNITY CONTRACT: LIABILITY OF SURETY. Where a contract provided that, upon the happening of a certain event, the contract was to become null and void, and the consideration of the contract returned, and that a bond given by a surety company to secure the faithful performance of the contract should be surrendered and canceled by the obligee, the liability of the surety became so far fixed upon the happening of the specified event that the damages against the surety could not exceed the amount then accrued. Subsequent negotiations between the parties to the original contract without the consent of the surety,

and of which the surety was not advised until long afterwards, did not operate to change or extend the liability of the surety company for damages for a breach of the contract.

2. ———: ———: DEFAULT: WAIVER. A provision in a contract bond that the obligee shall give notice within ten days after knowledge of a default in performance of the contract is for the benefit of the surety company, and may be waived by the conduct of its managing officers after knowledge of such default.

3. Contracts: ACTION: PARTIES. Section 8528, Comp. St. 1922, which provides, in substance, that a person in whose name a contract is made for the benefit of another may bring an action without joining with him the person for whose benefit it is prosecuted, is not inconsistent with section 8542, Comp. St. 1922, requiring the joinder of all parties interested in an action as plaintiffs, or defendants; section 8542 states a general rule, to which section 8528 is an exception.

4. Insurance: INDEMNITY CONTRACT: ACTION: DEFENSES. Where a contract is entered into in the name of one party for the benefit of himself and two others, with the knowledge and consent of the other contracting parties, and a surety bond is issued to him to guarantee the faithful performance of the contract, and the premium is paid, and retained by the surety company after knowledge that he is acting for others as well as himself, the fact that the bond provides, "no right of action shall accrue upon, or by reason hereof, to, or for the use, or benefit, of any one other than the obligee herein named," is not a sufficient defense to an action by the obligee on the bond in his own name, for the benefit of all, since the surety company has received and retained the full consideration for its obligation, and its liability is no greater than it would have been had the obligee been the sole party interested.

5. ———: ———: ———: DAMAGES. In an action against a surety company upon a bond to secure the performance of a building contract, damages for nonperformance may be recovered, not exceeding the penalty of the bond, with interest from the time the contract was broken. *Mullen v. Morris*, 43 Neb. 596.

6. Damages: Gains prevented as well as losses sustained may be recovered as damages upon the breach of a contract, but it must appear that the profits were reasonably certain to have been realized by performance, that they are not speculative or contingent, that such damages must have been within the contemplation of the parties, and the loss must appear to have resulted proximately and naturally from the breach.

7. ———: SPECULATIVE PROFITS. Profits which are speculative in

O'Shea v. North American Hotel Co.

their nature and depend upon so many contingencies as to render them exceedingly difficult of determination with any definiteness or certainty will not be considered as elements of damages for a breach of a contract, unless no other reasonable method of ascertaining the damages can be obtained; more especially if such profits depend upon the contingency that subsequent and collateral contracts are made from which such anticipated profits are expected to arise, and other and more definite means of arriving at the damages exist.

8. ————: ————. Where the title to certain real estate and $5,000 in money was transferred to a corporation by the owners of adjacent property as consideration for the erection, within a specified time, of a hotel upon the lots donated, evidence tending to establish the value of adjacent lots belonging to the donors at the date of the expiration of the contract, and of the value of such lots as they would have been at that date had the hotel been completed and in operation (the contract not providing that the donee should operate the hotel), is too remote and speculative and depends upon so many uncertain elements and contingencies that it does not furnish a proper measure of damages. In such a case, the proper measure of damages is the return of the property donated, or its value, with interest from the time of the breach of the contract to the time of trial.

9. **Fidelity Insurance.** Under section 7814, Comp. St. 1922, "guaranteeing the performance of contracts other than insurance policies, or guaranteeing and executing all bonds, undertakings and contracts of suretyship," is classified as "fidelity insurance."

10. **Insurance: ACTION: ATTORNEY'S FEES.** Section 7811, Comp. St. 1922, provides in substance that, where a beneficiary, or other person entitled thereto, brings an action at law upon any policy of guaranty, or fidelity insurance, against any company doing business in this state, the court is authorized, upon rendering judgment against such company, to allow the plaintiff a reasonable sum as attorney's fee in addition to the amount of his recovery, to be taxed as part of the costs, and the appellate court is authorized on appeal to allow a reasonable sum as attorney's fee for the appellate proceedings, *held*, that under the statute an allowance of attorney's fees should have been made in the case.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Reversed.*

*Montgomery, Hall & Young, Kimball, Peterson & Smith* and *Gaines, Ziegler, Van Orsdel & Gaines,* for appellants.

*Brogan, Ellick & Raymond* and *P. J. Barron, contra.*

Heard before MORRISSEY, C. J., LETTON, ALDRICH and DAY, JJ., SHEPHERD, District Judge.

LETTON, J.

This action was brought against the North American Hotel Company to recover damages for the breach of a contract to construct a hotel at Scottsbluff, and against the American Surety Company upon a bond executed by that company in favor of the plaintiff to secure the faithful performance of the contract. These parties will be hereinafter designated "the Hotel Company" and "the Surety Company."

Plaintiff O'Shea, J. C. McNish, and H. H. Ostenberg were the owners of a number of lots and tracts of land in and about the city of Scottsbluff, among them three lots upon the corner of Main street, two or three blocks north of the then business center of the city. They believed that the erection of a hotel on these three lots would greatly enhance the value of their adjacent real estate, and, on the 21st of March, 1917, plaintiff, on behalf of himself and his associates named, entered into a written contract whereby in consideration of the conveyance to the Hotel Company of the three lots, and the payment of $5,000 in cash, the Hotel Company agreed to erect thereon a modern fireproof hotel consisting of 80 rooms, and to complete the same within 15 months after the delivery of the deed and payment of the $5,000. The contract contained the provision that, if the erection of another hotel was started in the city by other parties before the Hotel Company began the erection of the hotel provided for, the contract should be null and void, and the Hotel Company should reconvey the lots and repay the $5,000. The Hotel Company failed to fully complete the erection of the hotel building within the time limited. Plaintiff alleges that, by reason of such failure, he and his associates were damaged by the loss of the increased value of the remaining lots to the amount of $60,000.

It is alleged that plaintiff notified the Surety Company on July 7, 1919, of the default in the construction of the hotel; that no objection was made by it on account of his failing to give notice earlier; and that it denied all liability on the bond and thus waived any defense by reason of failure to give notice.

The Hotel Company pleads fraud on the part of O'Shea by reason of a representation in a letter that no other hotel was being erected in Scottsbluff, an estoppel based on the fraud, and a general denial.

The Surety Company defends upon the ground that, after the bond was executed, the plaintiff and the Hotel Company, without its knowledge, made a material alteration in the contract whereby the Surety Company was discharged. It also alleges failure to give notice within ten days, as required by the terms of the bond, and that the bond was given for the benefit only of the plaintiff O'Shea. The reply alleges that the letter was intended by the plaintiff and understood by the Hotel Company merely to be a waiver of the right of plaintiff to declare the contract null and void in the event a third party should start to erect another hotel in Scottsbluff before the Hotel Company should begin to erect the hotel contemplated in the contract, and further alleges that the letter was written without consideration and at the special instance and request of the Hotel Company.

The original contract contains the following provisions:

"It is further agreed that if there shall be erected or started to erect another hotel in Scottsbluff, Nebraska, by any other party than the party of the first part, before the party of the first part shall start the erection of said hotel, then this contract is to be null and void, and the party of the first part is to deed back to the party of the second part the said lots so donated and to return the $5,000 in cash as hereinbefore recited, and the party of the second part is to surrender and cancel said bond furnished to him by the party of the first part."

Before the contract was executed, another concern, the

Nebraska Hotel Company of Lincoln, had entered into negotiations with the chamber of commerce of Scottsbluff for the erection of a hotel. Before April 16, 1917, a site had been acquired, and it had begun the erection of a hotel building. This was within the knowledge of O'Shea, and, under date of April 16, O'Shea signed the following letter to the Hotel Company:

"Gentlemen: I have investigated the possibility of any other party erecting a hotel at Scottsbluff, and have satisfied myself that there is no possibility that any move will be made to construct a hotel here. You are, therefore, authorized and instructed by me to proceed with the erection of the hotel building as provided for in our contract under date of March 21, 1917.

"It is expressly understood and agreed that any right to cancelation of said contract and the return of the donations therein specified are hereby waived by the undersigned, and that no demand by reason of any other hotel proposition will be made on you for cancelation of said contract. Yours very truly, Peter O'Shea."

The evidence establishes that this letter was prepared at the office of the Hotel Company in Omaha at the instance of Peter Elvad, who was in active charge of the negotiations of the company; that one Henzie, an agent of the Hotel Company, had been in Scottsbluff about three weeks before the letter was prepared, and had then ascertained that the Nebraska Hotel Company was about to erect a hotel there. When he returned he reported this fact to Elvad. Henzie, under Elvad's directions, then returned to Scottsbluff with the letter. He presented the same to O'Shea, saying that the company wanted him to sign it as a waiver "so that he could not back out in case the other hotel was built." It was then signed by O'Shea and returned to Elvad. It is also shown that the original contract was negotiated directly with Elvad by Ostenberg, McNish and O'Shea, and that Elvad was then informed that the Nebraska Hotel Company was negotiating with the Scottsbluff chamber of

commerce with respect to building a hotel in Scottsbluff. In the negotiations preceding its execution, Elvad stated that the Nebraska Hotel Company could not build the hotel on account of its financial situation.

If any other party started to erect another hotel in Scottsbluff before the defendant Hotel Company, the contract was to be null and void, the real estate was to be reconveyed, the $5,000 repaid, and the bond surrendered. These provisions were for the benefit of both parties to the contract. Under the evidence it is clear that both of the parties understood this letter to be a change and modification of the contract, and a waiver of the right of O'Shea to rescind by reason of the erection, or the beginning of the erection, of another hotel at Scottsbluff, and that there was no fraud or deceit as between O'Shea and the Hotel Company. The original contract in all other terms and conditions was left unaffected by these waivers. Considering both the direct and circumstantial evidence, we are convinced that the Hotel Company has not sustained the defense of estoppel based upon the letter.

The Hotel Company also defends upon the ground that O'Shea is not the real party in interest except as to his own one-third interest in the real estate, and assigns as error the ruling of the court allowing him full recovery. Before the contract was executed the Hotel Company was in possession of full knowledge as to the relations between McNish, Ostenberg, and O'Shea, and knew that the contract was being executed in the name of O'Shea for the benefit of himself and his two associates. It is said that though under section 8528, Comp. St. 1922, a person in whose name a contract is made for the benefit of another may bring an action without joining with him the person for whose benefit it is prosecuted. It is required by section 8542, Comp. St. 1922, that all parties united in interest must join as plaintiffs or defendants, and that the latter provision is mandatory, and controls. Of course, if the latter provision is mandatory, it would

entirely nullify section 8528. While section 8542 states the general rule, section 8528 constitutes an exception, under which this case falls. We conclude, therefore, that the defenses of the Hotel Company against an action for damages for breach of contract have not been sustained.

Coming now to consider the defenses of the Surety Company, we think it clear that the contract was materially altered as to this defendant by the letter of April 16, and the conduct of the parties to this contract thereafter. When the bond was executed the contract provided that, if the erection of another hotel had been begun in Scottsbluff before the Hotel Company began its building, the contract should be "*null and void*," and that O'Shea should "cancel and surrender" the bond. The condition upon which the contract and bond were to become void existed before the letter of April 16 was written. Under the contract it then became the duty of the Hotel Company to reconvey the three lots and to repay the $5,000. The extent of the liability of the Surety Company at that time became and was fixed, unless it assented to the change in the contract. This it did not do. Nothing that either of the parties could or did do thereafter without the consent of the Surety Company could increase its liability. We think, therefore, that the court erred in its instructions to the jury with regard to the measure of damages against the Surety Company. The measure against this defendant cannot exceed the fair market value of the three lots at the time the erection of the Lincoln Hotel was begun, with interest at 7 per cent. per annum from that date, together with the sum of $5,000, with interest at the same rate for the same time, but not exceeding its liability on the bond, or the liability of the Hotel Company.

As to the other defenses of the Surety Company: The defense of want of notice was not raised in its original answer, which was a general denial of all liability upon the policy. Moreover, defendant, by the conduct of its managing agent, his assurance to plaintiff after receiv-

ing notice of default that a full investigation would be made and the matter taken up for adjustment, and by the request of defendant for more time for investigation and negotiation with the Hotel Company, and its extension of the time fixed in the bond within which it is provided suit must be begun in case of a default, must be held to have waived the provision for 10 days' notice. It is clear that defendant treated the policy as in effect long after this period had expired. *St. Paul Fire & Marine Ins. Co. v. Gotthelf*, 35 Neb. 351; *Jensen v. Palatine Ins. Co.*, 81 Neb. 523; *Farrell v. Farmers & Merchants Ins. Co.*, 84 Neb. 72; *Morgenstern v. Insurance Co. of North America*, 89 Neb. 459.

The provision of the bond that no right of action shall accrue for the use or benefit of any one other than the obligee herein named is not inconsistent with the recovery of the whole damages by O'Shea. The contract and bond must be construed together. The case is not that of a voluntary surety, who is a favorite of the law, but the bond must be construed as an insurance policy, and most strictly against the insurer. The premium collected by the Surety Company was to cover the risk of all damages that might arise from the nonfulfilment of the contract. It is not called upon to respond for more than it would reasonably anticipate from a violation of the terms of the contract. Having received and retained the premium after knowledge that O'Shea was acting for others as well as for himself, it cannot now defend on the ground that it is only liable to O'Shea for his share of the loss. Under the allegations in the petition, and the facts in the case, a recovery by O'Shea in this action will effectually bar any subsequent recovery by Ostenberg and McNish, or either of them.

At this point it may be well to consider a matter which concerns the measure of damages with respect to the Hotel Company. During the trial plaintiff sought to prove the value, on July 2, 1918, of the real estate belonging to the donors, near the hotel corner, and the

value of those lots as they would have been on the same date had the hotel building been completed. Objection was made, among other reasons:

"Because the alleged damages, if any, were uncertain and speculative and not the direct or probable result of the failure of the Hotel Company to complete the hotel contracted for, and that any such alleged damages do not appear to have been within the contemplation of the parties to the contract pursuant to which the hotel was constructed."

"Mr. Gaines: And for the further reason it simply calls for a guess.

"Mr. Ellick: I don't know, Your Honor, but what this record ought to show that this is the very rule that these lawyers contended for when we tried this case the other time.

"Mr. Gaines: You cannot contend that for me,

"The Court: Well, with some qualifications, perhaps, that is the correct rule; it don't make any difference perhaps. Objection overruled. Answer the question.

"A. I would say $10,000 and $15,000 to $16,000."

The original petition, which was introduced in evidence for another purpose, shows that the action was begun against both defendants for the $5,000, and for the value of the three lots donated, with interest. At the oral argument in this case, Mr. Ellick, counsel for plaintiff, stated that the action was begun upon that theory; but, upon objection made by the defendants that this was not the true measure of damages, the objection was sustained, and the court ruled that the actual damages must be proved.

Of course, if the trial court, at the insistence and request of a party to a suit, adopts an erroneous measure of damages, the party who thus misled the court will not afterwards be permitted to take a contrary position and attack the soundness of the ruling in a reviewing court. This would trifle with the administration of justice. The quotation set forth is the only portion of the record con-

taining any reference to the ruling upon this question at the former trial, so far as has been pointed out, or we have been able to ascertain, and it is not sufficient to establish that such ruling was made, or, if made, was made at the instance of the Hotel Company. Considering the amount of the recovery permissible against the Surety Company in either event, it makes little difference to that defendant which measure of damages is adopted, but as to the Hotel Company the question is material. Objections were repeatedly made to the admissibility of testimony of this nature. When such testimony was first offered, the trial court seemed to be somewhat in doubt, saying, "Of course, it is somewhat speculative, but whether there is any different character of evidence that can be found that is more consistent or competent, I don't know; we have to take the best we can get," and the evidence was admitted.

We must consider and determine whether such testimony is speculative in its nature, too remote, and (as stated in some of the objections) invades the province of the jury. The court instructed the jury:

"In estimating the fair and reasonable market value of the lots in question you are entitled to take into consideration all the circumstances shown by the evidence to have existed in and about Scottsbluff on or about July 2, 1918, including the population of the town and probable increase in the same, the business transacted in Scottsbluff and surrounding country, the railroad, automobile and other transportation facilities and connections of Scottsbluff, the situation of said hotel with reference to the business portion of the city, the number of persons for whom hotel accommodations would be required, competition as affecting the probable success of the hotel, all such other hotels, rooming houses and facilities as are shown by the evidence to have actually existed in Scottsbluff on or about July 2, 1918, the opinions of witnesses as to such market value, and all other facts

and circumstances shown by the evidence having a bearing upon that question." ·

"The measure of plaintiff's damages, if any, is the difference between the fair market value of the lots belonging to plaintiff and his associates on or about July 2, 1918, with the hotel building as it stood in its uncompleted state at said time, and what would have been the fair and reasonable market value of said lots had said hotel building been completed at that time, provided there would have been an increase in the value of the lots, and provided, further, that plaintiff would only be entitled to recover such increase as would have resulted directly from the completion of said hotel building."

Mr. McNish, one of the persons for whose benefit the action was brought, after having testified as to the increase in value of the lots which would have been caused if the hotel had been completed by July 2, 1918, upon cross-examination testified as follows:

"Q. Now, assuming for the purpose of the question, that the hotel building upon those lots had been completed, but was not occupied as a hotel, simply a completed building, not used at all, would that make any difference in your estimate? A. Why, certainly. * * * Q. The lots, I said, assuming that the building on the lots owned by the North American Hotel Company had been completed as a hotel building in June or July, 1918, but was not occupied or used as a hotel property, merely a vacant building; would that make any difference in your estimate? A. An unoccupied building is always a detriment, I would say. Q. Yes, sir; in other words, if that building was completed and should continue unoccupied as a hotel building, it would not be a benefit to the addition, would it? A. Well, the people would not be up in there, that is a cinch. Q. Well, property of that character, a hotel building of 80 rooms, that couldn't be utilized as a hotel, wouldn't be of benefit to the surrounding property, would it? A. Well, if it was fully completed they surely wouldn't leave it unoccupied. Q. You are basing

O'Shea v. North American Hotel Co.

your statement then that the property would be worth from $1,200 to $1,500 more per lot upon the assumption that the building would be completed and run as a hotel, as a profitable investment, a successful investment; isn't it based upon that assumption? A. I wouldn't put it a successful investment, I would say if that was the best hotel in town it would bring the people there and it would naturally put other businesses in that vicinity. Q. That is, upon the assumption that it is running successfully as a hotel? A. That it is operated as a hotel. * * * Q. So, your whole estimate of values is based upon the assumption that the hotel would have been completed and being operated as a hotel, when you say under those circumstances it would be worth from $1,000 to $1,500 more per lot? A. No, sir; I wouldn't say. I would say a town growing from 1,200 to 1,500 in practically a ten-year period to 8,000 or 9,000 certainly has some increase in value."

Mr. Ostenberg, another of the parties for whose benefit the action was brought, testified that the value of the lots was about as high in June, 1918, as at any time. "Q. Since then, I suppose, they have gone down some. Is that correct? A. Well, there hasn't been anything selling. Q. Haven't gone down, but you can't sell, is that the idea? A. Not selling. I suppose if you wanted to sell you would have to take off something, just like you do on farm land."

Other witnesses for plaintiff testified that the lots would have been increased in value on an average of $1,000 by the completion of the hotel building in June, 1918. In answer to a question that, "If that hotel building were completed today, would that fact, in your judgment, increase the value of the lots in this tract that I have described? * * * A. Hardly to the extent it would if completed in 1918, as real estate at that time was more active than at present. The completion of the hotel at this present time would not have the effect of increasing the present value of the lots as much as it would had the

hotel been completed in 1918; possibly 25 to 50 per cent. less increase than in 1918."

Another witness for plaintiff testified that if the building were completed now it would add approximately $1,000 to the value of each lot.

For defendants, a number of witnesses testified, in substance, that the lots in question on July 2, 1918, were worth from $1,000 to $1,500 with the hotel building in the condition it then was, and that its full completion would not have enhanced their value at that time. One of the witnesses gave as his reason for this opinion: "Because any advance made on property by reason of the construction of any improvements are generally made anticipating the completion, or prior to the completion of the property, and not after the completion of the property." He also testified that the value of a large portion of the property in controversy has increased since July 1, 1918, to almost double what the value then was.

It seems clear that at least some of the witnesses testified having in mind the enhanced value of the lots if a first-class modern hotel were being operated at the point where the building was constructed. The quoted instruction permits the jury to consider the operation of the hotel. The contract contains no provision for the operation of the hotel, or for the carrying on of a hotel business in the building. It merely provides for the erection, and not for the operation, of the hotel. At the time of the trial over $150,000 had been expended on the building, the walls were up, the roof on, the rough cement floors in, no windows or doors in, and it was partly lathed. It was practically in the same condition as in July, 1918, when work was stopped.

While plaintiff has the right to recover all the damages which he actually suffered by the noncompletion of the building, if it is afterwards completed the use to which it might be put may result in an equal enhancement of the value of the unsold lots. There is testimony

that the building when completed is suitable for a hotel, a club, or a hospital.

We have repeatedly held that gains prevented as well as losses sustained may be recovered as damages upon a breach of contract. But it must appear that the profits were reasonably certain to have been realized by performance; that they are not speculative or contingent; that such damages must have been within the contemplation of the parties, and the loss must appear to have resulted proximately and naturally from the breach. *Punteney-Mitchell Mfg. Co. v. Northwall Co.,* 70 Neb. 688; *Wittenberg v. Mollyneaux,* 55 Neb. 429; *Silurian Mineral Springs Co. v. Kuhn & Co.,* 65 Neb. 646; *Roper v. Milbourn,* 93 Neb. 809.

"But anticipated profits cannot be recovered where they are dependent upon uncertain and changing conditions, such as market fluctuations, or the chances of business, or where there is no evidence from which they may be intelligently estimated. So evidence to establish profits must not be uncertain or speculative. It is not necessary that profits should be susceptible of exact calculation, it is sufficient that there be data from which they may be ascertained with a reasonable degree of certainty and exactness." 17 C. J. 785, sec. 112.

Plaintiff has cited cases to support the proposition that the loss of profits to be derived from the resale of lots or lands arising from the failure to perform a contract to erect factories, build railroads, switches, etc., may be recovered. As a general rule profits from collateral contracts are too remote to constitute elements of damage, yet there may be circumstances under which they are allowable. In the case of *Ironton Land Co. v. Butchart,* 73 Minn. 39, the contract not only provided for the erection of buildings for a structural steel manufacturing building, with a capacity for 500 employees, but also provided for its operation for a specified time. In other cases, where the contract provided for the building of a switch to a tract of land upon which a factory was to

be erected, or to extend an electric street car line to a proposed addition to a city, it was held that the measure of damages was the difference between the value of the property as it was and as it would have been had the lines been constructed. We have no quarrel with these decisions under the facts in each case, though in some of them the rule seems to have been adopted as the best available under the circumstances. In *Chesapeake & O. R. Co. v. McKell Co.*, 209 Fed. 514, it is said that such a measure of damages "must be adopted at the peril of otherwise saying that the damages are too speculative to permit recovery."

In other cases such recovery is denied, especially where the damages are claimed for a prospective loss of profits to be derived from a collateral transaction. *Fitzsimmons v. Chapman*, 37 Mich. 139; *Dullea v. Taylor*, 35 U. C. Q. B. (Canada) 395; *Clyde Coal Co. v. Pittsburg & L. E. R. Co.*, 226 Pa. St. 391; *Fox v. Harding*, 61 Mass. 516. If the evidence had been the best obtainable as to damages, and the testimony as to enhanced value, or loss of profits, had been confined to that which would reasonably have been caused by a failure to complete the erection of the building, with the factor or element of the operation of the hotel excluded from the consideration of the jury, a different question would be presented.

Each case must be determined upon its own peculiar facts. Where the evidence is sufficient as to definiteness and certainty, and the other elements necessary are shown to exist, such damages may be recovered. But, unless this condition obtains, the evidence may not be admitted if there is any other reasonable, more definite and satisfactory basis by which to measure the damages suffered.

If the building had been completed within the time limited, it would be improbable that plaintiff could at once realize on the 50 or 60 lots involved and secure the profits, and there is no evidence of this nature in the record. The sale of the lots both then and thereafter

would depend upon many contingencies—the growth of the city, the use to which the building would be placed, the business conditions in the country generally, and many other factors affecting the market for real estate in that particular locality. We are satisfied that the evidence as to the enhancement of value and loss of profits is so speculative, remote and uncertain, and depends upon so many contingencies, that it ought not to be accepted as the measure of damages in this case. The damages which plaintiff has suffered are easily ascertainable by a definite standard. In an action for a breach of a contract of this nature, where the damages are uncertain, speculative and not reasonably susceptible of definite ascertainment, the consideration money, or the value of property conveyed as a consideration, with interest, is the proper measure of damages. He has been deprived of the use of the three lots and of the $5,000 since the date of the payment, and of the conveyance to the Hotel Company. He is therefore entitled to recover the $5,000 paid, together with the fair market value of the lots at that time, with interest at 7 per cent. from the date stated. This returns to the plaintiff the entire consideration with interest as damages for the loss of the use of the money, and leaves him with the other real estate susceptible to any enhancement of value which may have occurred, or which may occur in future, by reason of the improvement of the adjacent property by the erection of the building.

It is alleged as error that the court allowed interest upon the penalty of the bond from the date of the breach. There is a conflict in the decisions on this point, but the question has been settled in this state in *Mullen v. Morris*, 43 Neb. 596, 611, and *Thomssen v. Hall County*, 63 Neb. 777, where it is shown that the weight of authority is in accordance with the holding of the trial court.

After the judgment was rendered, a motion was filed on behalf of plaintiff for the allowance of attorney's fees against the American Surety Company to be taxed as

part of the costs. The motion was overruled, and from this order the plaintiff has filed a cross-appeal. By section 7814, Comp. St. 1922, "guaranteeing the performance of contracts other than insurance policies, or guaranteeing and executing all bonds, undertakings and contracts of suretyship," is classified under the head "fidelity insurance." By the amendment to section 3212, Rev. St. 1913, made by section 2, ch. 103, Laws 1919 (Comp. St. 1922, sec. 7811), it is provided that, in actions upon "guaranty, fidelity or other insurance of a similar nature, * * * the court upon rendering judgment * * * shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his recovery, to be taxed as part of the costs, and if such cause is appealed the appellate court shall likewise allow a reasonable sum as an attorney's fee for the appellate proceedings." The contract and bond in this case were executed and breached before the passage of this amendment; but, since the attorney fee is part of the costs, it pertains to the remedy, and the legislature has power to regulate the same, even though the cause of action accrued before the passage of the amendatory act. The insurance policy was for the purpose of "guaranteeing the performance" of a contract "other than an insurance policy," and is clearly within the definition of "fidelity insurance," as to which an attorney's fee is provided for by the statute.

The judgment of the district court is reversed and the cause remanded for further proceedings. It is further ordered that each party pay one-half the costs in this court.

REVERSED.