HENRY MORGENSTERN, APPELLEE, V. INSURANCE COMPANY
OF NORTH AMERICA, APPELLANT.

FILED JUNE 13, 1911.   No. 16,491.

1. Insurance: PROOF OF LOSS: WAIVER: ACTS OF AGENT. The agent of
a fire insurance company in charge of and having power to ad-
just a loss may, by his conduct, waive proofs of loss, notwith-
standing the fact that the policy contains a provision that no
person is authorized to act in any manner relating to the insur-
ance unless duly authorized in writing.

2. ———: ———: ———: EVIDENCE. Evidence as to waiver of proofs
of loss examined, and found sufficient to sustain the verdict of
the jury on that question.

3. Appeal: INSTRUCTIONS: PREREQUISITES TO REVIEW. It is no doubt
the duty of the district court in a civil action to state the sub-
stance of the issues to the jury, and this should be done without
request; but, if the judge fails to do so, he should be requested to
charge as desired, and, if he refuses to so charge, exception
should be taken in order to predicate error for such failure.

4. ———: ———: BURDEN OF PROOF. Action on a valued policy of
insurance. One of the defenses interposed was the alleged crim-
inal destruction of the property by the assured. The evidence
upon that point being wholly insufficient to sustain such a charge,
held not reversible error for the court to refuse to instruct the
jury that the burden of proof was on the plaintiff to show that
the fire was not caused by his own criminal act.

5. Evidence examined, and found sufficient to sustain the verdict.

APPEAL from the district court for Nemaha county:
JOHN B. RAPER, JUDGE. Affirmed.

A. S. Churchill and H. A. Lambert, for appellant.

E. B. Quackenbush, contra.

BARNES, J.

Action upon what is known and described by section 43,
ch. 43, Comp. St. 1909, as a "valued policy of insurance."
The plaintiff had the verdict and judgment, and the de-
fendant has appealed.

It appears that on the 6th day of November, 1906, the defendant issued its policy of insurance to the plaintiff, and thereby insured his buildings and property situated on certain lots in Auburn, Nebraska, and used as a lumber yard, for the sum of $1,000; that on the 10th day of the following March the property insured was destroyed by fire; that the defendant refused to pay the loss, and this suit was brought to recover the amount named in the policy and $150 as an attorney fee.

The petition, in addition to the usual averments in such cases, contained an allegation, in substance, as follows: That on or about the 15th day of March, 1907, plaintiff notified defendant in writing and verbally of said fire and the loss of said property thereby, and also notified the local agent of the said defendant of said loss, and requested him to notify the company. Thereafter, to wit, on or about the 16th day of April, 1907, defendant stated to plaintiff that there was nothing to do but to pay his loss under said policy, and requested the plaintiff to take a less sum than the amount called for by said policy; that subsequent to giving said notice, as above set forth, defendant sent its representative and adjuster to the city of Auburn, Nebraska, the scene of said fire, to examine into and investigate the same and the cause thereof; that on or about the 10th day of April, 1907, its representative did make such investigation, and after making the same said defendant absolutely and unconditionally refused to pay said loss, and absolutely and unconditionally denied any liability whatsoever upon said policy; that no objection was made by the defendant company to the sufficiency of notice or proof of loss, and no request was ever made upon plaintiff for any other or further notice of proof of loss, by reason of which said facts said defendant waived notice and proof of loss.

The petition concluded with a prayer for a judgment for $1,000, with interest and costs, and attorney's fee of $150. To this petition the defendant answered, admitting its incorporation, the issuance of the policy, the destruction of

the insured property by fire, but denied that such destruction was total, and alleged as an affirmative defense "that said fire was caused by and through the criminal fault of the plaintiff, and whatever injury, if any, sustained by the plaintiff, is the result of the plaintiff's own criminal fault in causing said fire." The reply was a general denial. Upon the issues thus presented the cause was submitted to a jury, and a verdict was returned in favor of the plaintiff for the sum of $1,010.21, upon which a judgment was rendered, as above stated.

The defendant has assigned numerous errors, which will be considered and disposed of, so far as may be necessary, in the order in which they were presented.

Defendant's brief contains 18 exceptions to the admission of the testimony of one C. O. Snow, its local agent at Auburn, who issued the insurance policy in question. It is first insisted that the district court erred in permitting Snow to answer question No. 37, found in the bill of exceptions, over defendant's objections. The following is the question: "During the 60 days immediately following the 10th of March, 1907, did you see Mr. C. M. Richards, the adjusting agent?" This question was objected to as immaterial, irrelevant and incompetent, and nothing to show that C. M. Richards had anything to do with this matter. The objection was overruled, and the witness answered, "Yes, sir." As above stated, Mr. Snow was the local agent of the defendant company, and the record discloses that before question No. 37 was put to him he had testified without objection, in substance, as follows: That he was the local agent of the defendant company at Auburn, Nebraska; that he had a recording agency; he had identified the policy in question, and testified that it was his signature at the bottom of it. He was then asked: "Do you know, Mr. Snow, who was the adjusting agent for the Insurance Company of North America, the defendant in this case, for this territory, during the years 1906 and 1907? I will confine it to 1907. A. I know who acted in that capacity. Q. Who was it? A. I don't be-

lieve I can give his initials; his name is Richards. Q. Have you anything to refresh your memory from? A. Yes. Q. State definitely if you can do so. A. Maybe I can refresh it right here, I don't know. C. M. Richards. Q. Where does he reside? A. At Omaha, Nebraska." Witness then testified that he notified the company by letter at its home office in Erie, Pennsylvania, and also notified special agent Richards of plaintiff's loss.

It thus appears that the witness had testified without objection that C. M. Richards was the adjusting agent for the defendant company in Nebraska at the time the loss in question occurred. His testimony was competent to show what action, if any, was taken by Richards for the company in regard to the adjustment or payment of the plaintiff's loss. It further appears that this evidence was competent as tending to establish the waiver of written proof of loss upon which plaintiff relied.

The remaining objections to the testimony of this witness were based upon practically the same grounds, and the foregoing is sufficient to dispose of all of them. It is only necessary for us to say that the object of this testimony was to show the waiver upon the part of the defendant company which the plaintiff had alleged in his petition, and upon which he had relied as a reason for not furnishing written proofs of loss within 60 days, as provided in his policy of insurance, and it tended to establish that fact.

It is next contended that the court erred in overruling defendant's objections to certain questions propounded to the plaintiff while upon the witness stand. Without discussing these objections separately, it is sufficient to say that the testimony was offered for the purpose of showing the conduct of the company by which it was claimed it had waived the requirement of written proof of loss. It related to interviews between the plaintiff and C. M. Richards, who it was claimed was the defendant's special agent and adjuster in charge of the loss in question. This testimony was competent and was properly received by the trial court for the purpose of establishing that fact.

We have carefully examined the record as to the assignments of error relating to the admission and exclusion of testimony in this case, and find no reversible error therein.

Defendant assigns numerous errors in the instructions. Its first assignment is that the court erred in not instructing the jury what the issues were, as made by the pleadings. An examination of the charge as a whole convinces us that it was sufficient to inform the jury of the facts which were in issue and which they were required to determine. It appears, however, that the defendant cannot successfully urge this assignment, because it made no request for an instruction of that kind. It no doubt is the duty of the court to state the substance of the issues to the jury, and this should be done without request; but, if the judge fails to do so, he should be requested to charge as desired, and, if he refuses to so charge, an exception should be taken. *Barney v. Pinkham*, 37 Neb. 664; *Sanford v. Craig*, 52 Neb. 483; *Helwig v. Aulabaugh*, 83 Neb. 542.

Complaint is also made of the refusal of the court to give instruction No. 1, requested by the defendant, which was, in substance, that the plaintiff had the burden of proof to establish that the fire was not the result of his own criminal negligence. There are some authorities which hold contrary to this view; but we are not required to determine the question. The plaintiff alleged, in general terms, that the insured property was totally destroyed by fire without criminal fault or negligence on his part. This the defendant denied; but not being content to rely upon the issue thus presented, it went further and alleged as an affirmative defense that the plaintiff by his own criminal act set the fire which destroyed his property. This specific allegation was denied by the reply, and upon this issue evidence was introduced which is not only sufficient to establish plaintiff's innocence of the charge, but is conclusive upon that point, and the jury could not have found otherwise. It follows that if the refusal to give the instruction requested was error, which we do not here

determine, it was error without prejudice. We have read all of the instructions tendered and refused, as well as those which were given to the jury, and are of the opinion upon that branch of the case that the record is without reversible error.

We come now to consider the question of waiver. This is the only point upon which the evidence is conflicting. The court instructed the jury that the burden of proof was on the plaintiff to establish the waiver alleged in his petition, and, unless he had established that fact by a preponderance of the evidence, they must find for the defendant. It is contended by defendant that there is no competent evidence in the record upon which to predicate a waiver, and it is insisted that there could be no waiver unless the same was indorsed in writing on the policy by some one who was authorized to make such indorsement. This contention cannot be sustained, for the more recent authorities hold that the company may, by its conduct, waive proof of loss when it has notice of the breach of such condition; that notice to the agent is notice to the company, and such waiver need not be in writing. *Hartford Fire Ins. Co. v. Landfare*, 63 Neb. 559; *Billings v. German Ins. Co.*, 34 Neb. 502; *Hollis v. State Ins. Co.*, 65 Ia. 454; *Smith v. Home Ins. Co.*, 47 Hun (N. Y.) 30; *Harris v. Phœnix Ins. Co.*, 85 Ia. 238.

It is also well settled that the provision of an insurance policy requiring waiver to be in writing has no reference to proofs of loss and stipulations to be performed after loss. 10 Current Law, 394; *Reed v. Continental Ins. Co.*, 6 Pennewill (Del.) 204, 65 Atl. 569; *Wheaton v. North British & Mercantile Ins. Co.*, 76 Cal. 415.

Upon this point the bill of exceptions discloses that on the same day the fire in question occurred the plaintiff requested defendant's recording agent at Auburn to notify the defendant of his loss and request payment of the amount of his policy. The agent immediately notified the home office, and also notified C. M. Richards, who, the testimony shows, was defendant's special agent, with an

office in the city of Omaha; that Richards, within a day
or two thereafter, visited Auburn, but did not call upon
plaintiff. It further appears that about the 11th or 12th
of April following Richards again went to Auburn to
investigate the loss in question, and whether purposely
or not, failed to interview the plaintiff in relation thereto;
that the plaintiff, having ascertained the fact that Rich-
ards had been in Auburn and had failed to call on him,
immediately went to Omaha and saw him at his office in
the New York Life Building. Plaintiff testified that Rich-
ards told him at that interview that there was nothing to
adjust; that his loss was total; that he also informed him,
in substance, that, owing to a statement made by some per-
sons in Auburn that plaintiff had set fire to his own prop-
erty, he would not pay the loss; that Richards frequently
asserted that he would do nothing about it. This testi-
mony is disputed by Richards, who insists that he told
the plaintiff that they were not going to do anything about
it at present, that he desired to make further investigation
in relation to the matter; but his testimony does not seem
to be at all convincing, for it appears that he wrote a
letter to the local agent in relation to the matter of the
plaintiff's loss as follows: "Omaha, Neb. April 1, 1907.
Mr. C. O. Snow, Agent, Auburn, Neb. Dear Sir: I am
in receipt of a letter from Mr. Morgenstern asking me
when I will be at Auburn to adjust his loss. If you can find
it convenient I wish you would call up Mr. Morgenstern
and say to him that in reply to his letter I have requested
you to say that his loss will be taken care of as soon as
it is possible to get there, explaining to him, of course,
that losses on merchandise stocks and things of that kind,
where the loss is partial, are given the preference as to
time of adjustment, but that we will get to him as soon as
possible. Kindly let me hear from you, and oblige, Very
truly, C. M. Richards, Special Agent." It was shown that
Snow communicated the information contained in that let-
ter to the plaintiff. It was not claimed that defendant
ever requested plaintiff to make any further or other

33

proofs of loss, and we are therefore satisfied that the evidence was sufficient to require the submission of the question of waiver to the jury. *Hartford Fire Ins. Co. v. Land-fare, supra; Griffith v. Anchor Fire Ins. Co.,* 143 Ia. 88; *Nicholas v. Iowa Merchants Mutual Ins. Co.,* 125 Ia. 262; *Harris v. Phœnix Ins. Co.,* 85 Ia. 238; *Green v. Des Moines Fire Ins. Co.,* 84 Ia. 135; *American Ins. Co. v. Gallatin,* 48 Wis. 36; *Alexander v. Continental Ins. Co.,* 67 Wis. 422.

It is contended, however, that the evidence is insufficient to show that Richards had authority to waive proofs of loss. Defendant's local agent testified that Richards was the adjusting agent with whom he had always done business in his territory. In his conversations with plaintiff, Richards did not claim to be without authority to adjust the loss, but, on the other hand, led the plaintiff to believe, for a time at least, that his loss would be adjusted, although later on he refused to acknowledge any liability on the part of the company. These facts, together with the letter quoted above, seem to us to be amply sufficient to establish Richards' authority, and warrant the jury in finding that the plaintiff had established the waiver set forth in his petition. This was a question of fact for the determination of the jury, and was submitted to them under an instruction most favorable to the defendant. We are of opinion that the evidence on this point sustains the verdict. Authority to adjust carried with it the power to waive the formal proofs of loss. *Ruthven Bros. v. American Fire Ins. Co.,* 92 Ia. 316.

Finally, it is contended that the court erred by instructing the jury to deduct from the amount of the policy the value of that part of the platform scales which were situated upon the street, because they could not determine that amount. It is apparent from an examination of the verdict that they made the proper reduction. Otherwise the verdict would have been for $1,000, with interest from the 10th day of May, 1907, to the time of the trial, while it was for only $1,010.21. Therefore, upon this point the record is without error.

It satisfactorily appears that the cause was fairly tried, that the record contains no reversible error, and therefore the judgment of the district court is

AFFIRMED.