H. B. CARR et ux., appellees, v. IOWA MUTUAL TORNADO INSURANCE ASSOCIATION, appellant.

No. 47897.

(Reported in 49 N.W.2d 498)

October 16, 1951.

R. J. Sullivan, of New Hampton, and Zastrow, Noah & Smith, of Charles City, for appellant.

Geiser, Donohue & Wilkins, of New Hampton, for appellees.

THOMPSON, J.—Under date of July 15, 1949, the defendant issued to plaintiffs a policy insuring farm buildings against windstorm damage. On May 5, 1950, a violent wind struck the state of Iowa. The barn on plaintiffs' farm, one of the buildings covered by the policy, was destroyed by the gale. There is no controversy as to the amount of the damage, which the jury placed at $1800, the amount of coverage on the barn as fixed by the policy.

The sole dispute in the case centers around provisions of the contract of insurance which we set out herewith:

"D. That the Association shall not be liable for loss or damage caused by hail (whether driven by wind or not) except to buildings in first-class condition; and when any foundation, supporting wall or other support is removed from any building, or the hazard is increased by any means within the knowledge of the insured, this insurance is void.

"STANDARD PROVISIONS

"The Association shall not be liable for loss or damage - - - by neglect of the insured to use all reasonable means to save and preserve the property during and after a windstorm.

"INCREASED HAZARD. Unless otherwise provided in writing added hereto this Association shall not be liable for loss or damage occurring while the hazard is increased by any means within the control or knowledge of the insured, including but not limited to neglect or failure to repair; for loss or damage to buildings, or contents of buildings in process of construction or reconstruction unless entirely enclosed and under permanent roof with all outside doors and windows permanently in place."

Defendant's only assigned error is based upon the refusal of the trial court to sustain its motion for directed verdict, made at the close of all the evidence in the case, and the submission of the cause to the jury. It is the claim of the defendant that the plaintiffs had removed a portion of the supporting wall of the barn and had otherwise increased the hazard from damage by wind.

Of course, in determining whether the defendant was entitled to a peremptory instruction, the evidence must be construed in its aspect most favorable to the plaintiffs. This principle is not of great importance here, since there is very little factual dispute. We turn to the record.

It appears that about ten days before May 5, 1950, the plaintiff, H. B. Carr, called upon one Frank Leach, the agent for defendant who had written the insurance, and asked him if the insurance would be good if he started to repair the barn. He said he expected to let a contract for remodeling. Leach advised him that under no circumstances should he make any changes in the framework or joists of the barn or the main framework without getting other insurance; that his present policy would not be good under such circumstances. It goes without saying that it is the policy itself and not Leach's interpretation of it that is material here.

After this conversation, and, according to Carr, before the Northern Lumber Company, with which he expected to, and did, contract for the repairs or remodeling of the barn, had commenced any work, Carr himself cut several of the siding boards on the south side of the barn, removing the lower parts of them for a distance of two to three feet above the sill. The boards at the bottom, and the sill, were badly rotted, and at places there were holes large enough to permit pigs to get through the wall of the barn. There is some dispute as to the exact opening left when the boards were

sawed off, but plaintiffs put it as being between eleven and twelve feet long and from eighteen to twenty-four inches high. Defendant's evidence makes the opening somewhat larger. The work of removing the rotted bottom parts of these boards was done by Carr about May 3. He testified that the removal of these boards was not part of the contract for repairing and remodeling the barn, which he said had not been started at the time of the windstorm damage. It is the removal of these boards, or rather the lower part of them, which the defendant says was sufficient to bring into operation the provisions of the insurance policy above set out, to the extent that the court should have held, as a matter of law, that the policy was void and the plaintiffs were not entitled to recover.

I. This case is governed by the rule expressed and followed in Nash v. American Ins. Co., 188 Iowa 127, 174 N.W. 378, 10 A. L. R. 724. The plaintiff there had a policy of fire insurance upon his silo. Late in the winter some of the silage became frozen and he built a fire near the bottom of the silo for the purpose of thawing it. The fire got beyond control and destroyed the silo. This court said, at pages 129, 130 and 131 of 188 Iowa, pages 378, 379 of 174 N.W.:

"The policy provided that it should become void 'if the hazard be increased by any means within the knowledge of the insured.' The trial court held, and we think rightly, that building the fire in the silo did, in fact, increase the hazard. Was this increase of hazard such as was contemplated by the clause quoted? If so, whatever the insured may have done, though temporary or incidental in its nature, in the use of his property, having that effect, must have rendered the contract invalid. Such is not the necessary construction of the clause quoted. Similar clauses have been held by other courts to have reference to changes in the use, situation, or exposure of the property, permanent in their nature. In Angier v. Western Assur. Co., 10 S. D. 82, 66 Am. St. 685, the stipulation was that 'this entire policy shall be void * * * if the hazard be increased by any means within the control or knowledge of the insured,' and the court held that the term ' "increase of hazard" denotes an alteration or change in the situation or the condition of the property insured which tends to increase the risk.

These words imply something of duration, and a casual change of a temporary character would not ordinarily render the policy void.' In First Cong. Church v. Holyoke Mut. F. Ins. Co., 158 Mass. 475, 35 Am. St. 508, and Harris v. Columbiana Ins. Co., 4 Ohio St. 285, 286, the rule was announced that a casual or temporary change will not ordinarily be sufficient to void a policy under this provision. See, also, Williams v. New England F. Ins. Co., 31 Me. 219; Westchester Fire Ins. Co. v. Foster, 90 Ill. 121. The provision does not prohibit the owner from exercising the usual and ordinary acts of ownership. Jolly's Admrs. v. Baltimore Eq. Soc., 1 Harris & Gill, Md., 295, 18 Am. Dec. 288; Peterson v. Mississippi Valley Ins. Co., 24 Iowa 494. Nor does it include mere acts of negligence on his part, unless these are so continuous and of such a nature as to increase the hazard more or less permanently. It is to be presumed that the contract was entered into with reference to the character of the property and the owner's use of it, and it would greatly impair the advantages of insurance, were trivial or temporary variations permitted to defeat the contract."

We set this out at some length because it so clearly expresses the law, and is directly in point upon the situation before us. Later, in the Nash case, pages 131 and 132, we discussed Des Moines Ice Co. v. Niagara Fire Ins. Co., 99 Iowa 193, 200, 68 N.W. 600, and Davis v. Western Home Ins. Co., 81 Iowa 496, 46 N.W. 1073, 10 L. R. A. 359, 25 Am. St. Rep. 509, and held that in effect the Des Moines Ice Company case overruled the Davis case, in line with our holding in Nash v. American Ins. Co.; supra. By way of emphasis, perhaps, the opinion in the Nash case concludes by specifically overruling Davis v. Western Home Ins. Co., supra, which had in effect announced the rule that an insurance policy might be voided by an act which increased the hazard, even though it were temporary or casual. ·

██ ██ The rule of the Nash case, which has been unchallenged in Iowa since its pronouncement, is that casual or temporary repairs, or other acts not of a nature permanently affecting the risk, do not void the policy; provisions such as the defendant relies upon here notwithstanding. The injustice which any other rule would work to the insured is aptly illustrated by the instant

case. The quoted provision of the policy makes it void, among other clauses, if the hazard is increased by "neglect or failure to repair." The record is undisputed in showing that the parts of the boards which plaintiff sawed off were badly rotted. They offered no support for the structure of which they were a part, and if plaintiff had been guilty of "failure to repair," and a windstorm loss occurred, he might have been met with the contention that his policy was void because of such neglect. Indeed, defendant raises the point in argument. Defendant's brief and argument says:

"Now if it be said that there was no removal of actual support by the sawing off of the boards because they were already so rotted that they did not afford any support in the condition they were in, then it would have to follow that there was an increase of hazard by neglect or failure to repair."

Plaintiffs are thus placed in a position, if defendant's theory is to be adopted, in which their policy is voided if they fail to repair, and of suffering the same penalty if they do. Of course such a contention is without the sanction of the law.

Clearly, the repairs which the plaintiffs were attempting to make were merely temporary. It is not contended that they had any thought of leaving the barn with the opening where the bottoms of the boards had been removed, for any length of time. The net result of this operation must have been, eventually, to diminish the hazard rather than to increase it. Defendant has no just complaint because its motion for directed verdict was denied.

II. The burden was upon defendant to show that what the plaintiffs did actually increased the hazard. No attempt was made to do so, unless the mere fact that it was shown that an opening was made in the lower part of the south side of the barn furnishes such proof. We need not decide whether courts should take judicial notice that an opening in a building gives the wind a better chance to wreck the structure. Since in any event the "increase of hazard", if such was proven, was only temporary, as pointed out in Division I, the point is immaterial. However, we call attention to the well-settled rule that a verdict is seldom directed in favor of the party having the burden of proof, although

the rule is not without exception. Here defendant contends that the burden was upon plaintiffs to show that their removal of the boards did not contribute to the damage to the barn when the wind came. Defendant cites section 515.101, Code of 1950, which says:

"Any condition or stipulation in an application, policy, or contract of insurance, making the policy void before the loss occurs, shall not prevent recovery thereon by the insured, if it shall be shown by the plaintiff that the failure to observe such provision or the violation thereof did not contribute to the loss."

We think that defendant misconceives the meaning and effect of the statute. Before plaintiffs need attempt to show that the removal of the lower part of the boards did not contribute to the loss, the defendant must carry, by a proper quantum of proof, the burden placed upon it to show that plaintiffs had done something to void the policy. It is only when there has been sufficient proof of some act of the insured which would ordinarily abrogate the contract, that section 515.101 has any effect or meaning. Then the insured may show that his action, although technically a violation of some provision of the policy, did not in fact contribute to the damage. For the reasons set out in Division I, that point was never reached here. The case was properly submitted to the jury, which found that the policy was in full force at the time of the loss.

No error prejudicial to defendant appears.—Affirmed.

All JUSTICES concur.