THE KEENE COOPERATIVE GRAIN & SUPPLY COMPANY, A CORPORATION, APPELLEE, V. FARMERS UNION INDUSTRIES MUTUAL INSURANCE COMPANY, A CORPORATION, APPELLANT.

128 N. W. 2d 773

Filed June 5, 1964. No. 35614.

Downing & Downing and John E. Dougherty, for appellant.

Meier & Goossen and Tye, Worlock, Knapp & Tye, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.
This is an action upon a fire insurance policy issued

by the Farmers Union Industries Mutual Insurance Company, the defendant, to the Keene Cooperative Grain & Supply Company, the plaintiff. In the trial court the jury returned a verdict for the plaintiff. The defendant's motion for new trial was overruled and it has appealed.

The plaintiff operates a grain elevator and storage facility at Keene, Nebraska. On October 31, 1960, the manager of the plaintiff noticed that some of the bolts in two of the steel grain storage tanks had been sheared off and that the seams in the tanks were spreading in several places. The tanks are 38 feet in diameter and approximately 65 feet in height, and are constructed of steel sheets bolted together and placed upon a concrete foundation. Both of the tanks were filled with grain. A meeting of the plaintiff's board of directors was called and Adrian D. Sivinski, one of the contractors, and Jay Swenson, a representative of the company which had supplied the tanks, were notified.

The board met with Sivinski and Swenson at the elevator on November 1, 1960. It was decided that emergency repairs should be made by reinforcing the tanks with cables and welding metal bars across the seams that had failed. Arrangements were made for the work to start that afternoon.

On November 30, 1960, it was discovered that smoke or steam was escaping from a bolt hole in tank No. 18 and an area on the exterior surface of the tank was warm. Carbon tetrachloride was pumped into the tank through the bolt hole and on the following day another chemical was injected into the tank. The manager of the plaintiff discussed the situation with the fire chief at Minden, Nebraska, and with the fire chief at Hildreth, Nebraska. The fire chief at Hildreth, Nebraska, inspected the tank and suggested that the openings into the tank be sealed. Tar and a substance similar to putty were then applied to the cracks in the foundation and the openings in the tank.

Some time later the exterior of the tank cooled off but

at different times the surface of the tank would become warm again. On one occasion a liquid chemical was put into the tank. The tank was equipped with temperature recording devices known as hot spot detectors. At no time did these devices indicate that there was an abnormal temperature in the grain.

Shortly after January 1, 1961, Ben Howell, a field representative of the defendant, called at the office of the plaintiff. The plaintiff's manager told Howell that the plaintiff had had some trouble with the welding and that the plaintiff had a fire or had had a fire. Howell said not to worry; that there was plenty of fire insurance; and that when the plaintiff found out what the bill was, to send it in and the defendant would take care of it.

On March 21, 1961, when the plaintiff began to unload the grain from tank No. 18, it became apparent that a quantity of the grain had been damaged by fire. The plaintiff's manager notified Howell by telephone and the defendant sent adjusters to inspect the tank and investigate the loss. Later the defendant denied liability under the policy and this action followed.

The defendant assigns as error the insufficiency of the evidence to sustain the judgment; the admission of evidence with regard to waiver of notice and proof of loss; the admission of evidence with respect to custom and usage of other insurance companies; and the giving of certain instructions.

In determining the sufficiency of the evidence to sustain the judgment, the evidence must be considered most favorably to the successful party and every controverted fact must be resolved in his favor. Trailmobile, Inc. v. Hardesty, 173 Neb. 46, 112 N. W. 2d 535. The evidence in this case, when considered in conjunction with this rule, is sufficient to sustain the judgment unless the evidence establishes one or more of the policy defenses upon which the defendant relies. These defenses will be discussed separately.

The insurance policy involved in this case required the plaintiff to give the defendant immediate written notice of any loss and render a proof of loss within 60 days after the loss. The defendant contends that the plaintiff has no right of recovery because the plaintiff failed to comply strictly with these requirements of the policy.

The word "immediate" in referring to the notice required in an insurance policy means with reasonable celerity, with reasonable and proper diligence, and what is a reasonable time depends upon all the facts and circumstances of each particular case. George v. Aetna Casualty & Surety Co., 121 Neb. 647, 238 N. W. 36.

A provision in a fire insurance policy as to notice of loss and proof of loss requires that reasonable information be given to the insurance company so that it can form some estimate of its rights and duties before it is obliged to pay a loss, and such a provision should be construed with great liberality. Continental Ins. Co. v. Lippold, 3 Neb. 391. Such a provision is for the benefit of the insurance company and can be waived by it. Morris v. American & Foreign Ins. Co., 150 Neb. 765, 35 N. W. 2d 832.

An insurance company may be estopped from denying liability where, by its course of dealing and the acts of its agent, it has induced the insured to pursue a course of action to his detriment. Everett v. Metropolitan Life Ins. Co., 129 Neb. 386, 261 N. W. 575. A course of conduct by the agent of a fire insurance company which reasonably induces the insured to believe that the company will not require strict compliance with the notice of loss and proof of loss requirements of the policy constitutes a waiver of strict compliance with these requirements. Brown v. Firemen's Insurance Co., 106 Neb. 615, 184 N. W. 88.

The jury in this case fixed the date of the fire as November 30, 1960. The undisputed evidence is that

the plaintiff's manager notified the defendant's field representative in person at the elevator in Keene, Nebraska, early in January 1961, that a loss had occurred. The field representative replied that when the amount of the loss had been determined, a statement of the loss should be sent to the defendant and the loss would then be paid. The evidence further shows that this was the procedure which the plaintiff and the defendant had followed in regard to three previous claims made under this policy. This evidence, which is uncontradicted, shows a waiver by the defendant of strict compliance with the immediate written notice requirement of the policy and a substantial performance of the notice requirement of the policy by the plaintiff. Consequently, under the facts and circumstances in this case, the failure of the plaintiff to give immediate written notice of the loss to the defendant was not a defense available to the defendant.

The plaintiff did not submit a formal proof of loss to the defendant but did submit a formal written "Notice of Loss" on July 22, 1961. In the absence of a provision in the policy that the failure to furnish a proof of loss within the time required shall work a forfeiture of the insurance, the fact that the insured did not strictly comply with this requirement of the policy will not defeat recovery. Northern Assurance Co. v. Hanna, 60 Neb. 29, 82 N. W. 97. The evidence shows that in handling previous losses under this policy the defendant had not insisted upon strict compliance with the proof of loss requirement of the policy and that in this instance the plaintiff was following the same procedure that had been followed in regard to previous losses.

The trial court instructed the jury that a waiver of the requirements of the policy concerning notice of loss and proof of loss need not be in writing. The defendant contends that the instruction was erroneous because the policy provides no waiver of any provision shall be valid unless in writing. An insurance com-

pany may waive requirements of the policy concerning notice of loss and proof of loss by the conduct of its agents, and a provision in the policy requiring any waiver to be in writing has no reference to proof of loss and other requirements to be performed after a loss has occurred. Morgenstern v. Insurance Co. of North America, 89 Neb. 459, 131 N. W. 969.

The plaintiff produced three witnesses who were permitted to testify, over proper objection, that it was the general usage and custom of insurance companies in that area not to require a written notice of loss or a written proof of loss within the time specified in the policy. This evidence was not relevant to any issue in the case and the objections to the testimony should have been sustained.

The policy issued to the plaintiff clearly and expressly required both a written notice of loss and a proof of loss within 60 days. Evidence of custom and usage is not admissible to vary or contradict the clear and unambiguous terms of an express contract. Rickertsen v. Carskadon, 172 Neb. 46, 108 N. W. 2d 392. Evidence that third parties customarily waive certain provisions in their contracts did not tend to prove that the defendant in this case waived the provisions in its policy.

Error in the admission of evidence is presumed to be prejudicial unless it clearly appears from the record in the case that it did not affect unfavorably the party against whom it was admitted. Grantham v. Farmers Mutual Ins. Co., 174 Neb. 790, 119 N. W. 2d 519; Singles v. Union P. R.R. Co., 174 Neb. 816, 119 N. W. 2d 680; Phillips Petroleum Co. v. City of Omaha, 171 Neb. 457, 106 N. W. 2d 727; Fries v. Goldsby, 163 Neb. 424, 80 N. W. 2d 171; Borden v. General Ins. Co., 157 Neb. 98, 59 N. W. 2d 141. From our examination of the record in this case we are unable to say that the admission of evidence as to the usage and custom of other insurance companies did not affect the defendant unfavorably. This evidence tended to characterize the defendant as being

unreasonable or unfair in relying upon the terms and conditions of its policy, and was prejudicial to the defendant.

The policy involved in this case provided that the defendant "shall not be liable for loss occurring * * * while the hazard is increased by any means within the control or knowledge of the insured." The defendant argues that the repair of the tank by welding increased the hazard and that the defendant should not be liable for the fire and resulting loss.

A provision in a fire insurance policy against an increase in hazard is generally considered to relate to a change in the use of the property and not to prohibit the making of necessary repairs to the property. See, Carr v. Iowa Mutual Tornado Ins. Assn., 242 Iowa 1084, 49 N. W. 2d 498, 28 A. L. R. 2d 751; 29A Am. Jur., Insurance, § 891, p. 100. The policy involved in this case specifically provided that permission was granted for alteration and repairs to any building. The trial court instructed the jury that the plaintiff was required to use ordinary care in making repairs to the tank and that this should be considered in determining whether the plaintiff increased the risk in violation of the policy provisions. This was a correct interpretation of the policy.

The policy involved in this case provided: "This Company shall not be liable for loss by fire * * * caused, directly or indirectly, by * * * neglect of the insured to use all reasonable means to save and preserve the property at and after a loss." The policy further provided that in the event of a loss the plaintiff should "forthwith separate the damaged and undamaged personal property." The defendant argues that the loss in this case resulted from the failure of the plaintiff to remove the grain from tank No. 18 after the fire was discovered and not extinguished and that the failure of the plaintiff to separate and preserve the undamaged grain prevents any recovery on the policy.

The two steel tanks which were found to be defective

on October 31, 1960, were known as No. 18 and No. 19. Tank No. 18 contained over 67,000 bushels of wheat. Tank No. 19 contained corn.

The plaintiff had no extra storage capacity available at that time into which the grain from either tank No. 18 or tank No. 19 could be transferred. Because tank No. 19 was in worse condition than tank No. 18, the plaintiff decided to repair tank No. 19 first. The plaintiff requested loading orders from the Commodity Credit Corporation for the grain in tank No. 19, completed permanent repairs to tank No. 19, and then began to transfer the grain in tank No. 18 to tank No. 19. Tank No. 19 did not become available for use again until March 21, 1961.

Emergency repairs were made to both tanks by welding. There was no fire loss of any kind in tank No. 19. The evidence shows that after November 30, 1960, the plaintiff suspected that there was a fire, or had been a fire, in tank No. 18, but there was no conclusive evidence at any time before March 21, 1961, that a fire existed in tank No. 18 which had not been extinguished. The hot spot detectors in tank No. 18 did not indicate an abnormal temperature in the grain at any time. Although the surface of tank No. 18 became warm at different times, there was evidence that moisture will cause grain to heat under certain conditions.

The requirement of the policy is that the plaintiff shall use all reasonable means to save and preserve the property after a loss. The trial court instructed the jury that the plaintiff was required to use ordinary care to protect the property from further damage. We think that the evidence in this case presented a question for the jury as to whether the plaintiff had complied with this requirement of the policy, and that the instructions of the court properly submitted this issue to the jury.

The policy involved in this case provided that the basis for determining value and loss on grain shall be the market value at the time of the loss in Chicago,

Duluth, Kansas City, Minneapolis, or other terminal market selected by the insured, less unincurred selling expenses and freight. The plaintiff produced evidence as to what the market price of wheat was in Kansas City and what the freight rate was to Kansas City on the date that the loss occurred. The evidence also shows that the market value of wheat in Keene, Nebraska, is determined upon the basis of the market price in Kansas City, and that the damaged wheat was disposed of by sale.

The trial court instructed the jury that the loss should be computed upon the basis of the Kansas City market. The defendant contends that this instruction was erroneous because there was evidence that the liability of the plaintiff to the Commodity Credit Corporation for the wheat in tank No. 18 had been settled upon the basis of the market price in Omaha. There was no evidence that the plaintiff selected the Omaha market for any purpose, but in any event the liability of the plaintiff to the Commodity Credit Corporation was entirely separate and distinct from the rights which the plaintiff had against the defendant under the fire insurance policy. The plaintiff had a right to select the Kansas City market as the basis for computing the loss under the policy. The evidence produced and the instruction of the court conformed to the requirement of the policy.

In instruction No. 1 the trial court summarized the contentions of the parties and advised the jury that the defendant admitted that the plaintiff had suffered some loss to grain by reason of fire. The defendant contends that the instruction was erroneous because it did not refer to the general denial of the answer which raised the question of the character and extent of the damage.

The defendant did not allege or attempt to prove that a fire did not occur or that the grain in tank No. 18 was not damaged. The theory of the defense was that the plaintiff violated the terms and conditions of the policy. By other instructions the court advised the jury that the

plaintiff was required to prove the amount of its damages and the method by which the damages should be computed. Instructions to the jury should be considered as a whole and if they fairly submit the case, they are not erroneous. Hiner v. Nelson, 174 Neb. 725, 119 N. W. 2d 288. The defendant's objections to instruction No. 1 is without merit.

Because of error in the admission of evidence as to the usage and custom of other insurance companies, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

SPENCER, J., dissenting.

I am not in accord with the majority opinion. The judgment herein should be affirmed. I do not believe the admission of the evidence of custom and usage could possibly be prejudicial error in this case.

Defendant's objection to the testimony was that it was an attempt to vary, contradict, or change the terms of a written contract. The insurance policy in question required a written proof of loss. The majority opinion specifically finds that under the evidence herein there was a waiver by the defendant of strict compliance with the contract, and that the failure of the plaintiff to give immediate written notice of the loss of the defendant was not a defense available to the defendant.

Further, before the questioned testimony was admitted, evidence had been adduced to show that in handling previous losses under this policy, the defendant had not insisted upon strict compliance with the proof of loss requirement of the policy, and that the plaintiff in this instance followed exactly the same procedure followed on previous losses under the policy. The testimony objected to does no more than show that other insurance companies in that particular area followed the same procedure which was followed by the defendant's representative in this instance as well as on other adjustments made under the same policy.

In Smith v. Bankers Nat. Life Ins. Co., 130 Neb. 552, 265 N. W. 546, we said: "Complaint is made that the trial court erred in permitting the appellee to testify, over objection, as to a conversation had with one of the directors of the company outside the office of the company. The law is well settled that directors of a corporation, as such, have the authority to bind it only when they act collectively as a board. They are not ex officio agents of a corporation and their individual declarations and admissions, when not acting as a board, are not binding on the corporation, nor admissible in evidence against it. 3 Fletcher, Cyclopedia Corporations, sec. 2168. This testimony seems to have been received as evidence of waiver of the provision requiring proof of insurability. The record discloses the proof on this point to be ample outside of any testimony of the director; therefore, the reception of such evidence would be, at the most, error without prejudice."

In O'Neil v. Union Nat. Life Ins. Co., 162 Neb. 284, 75 N. W. 2d 739, we said: "The conclusion is that it was error to admit the certified copy as evidence of the cause of death, but, as was true in NcNaught v. New York Life Ins. Co., supra, the error was without prejudice since death and cause of death was otherwise positively and unequivocally proved as will hereinafter appear."

As I view the record, therefore, the admission of this evidence, which was not relevant to any submissible issue in the case, was not prejudicial error because the plaintiff had previously established by other evidence that the defendant had waived strict compliance. Harmless error in the admission of evidence has never been sufficient ground for the reversal of a judgment. Bresley v. O'Connor, Inc., 163 Neb. 565, 80 N. W. 2d 711.

WHITE, C. J., authorizes me to say that he joins in this dissent.