**COMMERCIAL STANDARD INSUR-
ANCE COMPANY, a corpora-
tion, Plaintiff,**

v.

**Michael E. HALEY, d/b/a Haley Truck-
ing, C. H. Betterton, A. B. C. Loan Cor-
poration, and A. B. C. Credit Corpora-
tion, Defendants.**

**Civ. No. 3–673–W.**

United States District Court
S. D. Iowa, W. D.
March 18, 1968.

Thomas A. Walsh, Omaha, Neb., Emmet Tinley, Council Bluffs, Iowa, for plaintiff.

Leonard L. Ryan, Audubon, Iowa, A. B. Crouch, Des Moines, Iowa, Henry C. Rosenthal, Jr., Omaha, Neb., for defendants.

## MEMORANDUM AND ORDER

HANSON, District Judge.

This action was instituted by plaintiff for a declaratory judgment upon a combination automobile policy issued to the defendant Haley by plaintiff. Jurisdiction is grounded upon diversity of citizenship.

The plaintiff seeks a declaration that it is not liable to the defendants Michael E. Haley, C. H. Betterton, A.B.C. Loan Corporation, or A.B.C. Credit Corporation for any property loss incurred by them as the result of an accident which occurred on September 22, 1965, by reason of alleged violations of a Limitation of Use Endorsement in the policy plaintiff issued to the defendant Haley. Plaintiff also prays for a declaration that it should not be required to defend the defendants Haley or C. H. Betterton or to pay any judgment against them arising out of the accident. Plaintiff further prays for such other relief as the Court may deem just and equitable. The defendants A.B.C. Loan Corporation and A.B.C. Credit Corporation have filed a cross-claim against plaintiff upon the basis of a Loss Payable Clause in the policy in the name of A.B.C. Finance.

The plaintiff has made a responsive prayer for relief against the defendant Haley for any amount that may be recovered against it under the Loss Payable Clause.

A stipulation of facts was entered into by the parties and the Court will set out material portions thereof. The plaintiff is engaged in the sale of insurance policies, including motor vehicle liability and property damage insurance. The defendant, Michael E. Haley, is in the trucking business and he owns various trucks, tractors, and trailers which are used in his operation. The defendant C. H. Betterton was an employee of Mr. Haley during the period in question.

Prior to July 11, 1965, one David L. Fulkerson, an agent for plaintiff, called on the defendant Haley and solicited his business in respect to insurance upon his vehicles. As a result of the meeting, on July 11, 1965, the plaintiff issued the defendant Haley a combination automobile policy which provided insurance coverage on certain commercial trucking equipment for Mr. Haley and individuals using his rigs with his permission.

The Combination Fleet Schedule shows that the following equipment was insured: a 1958 IHC Diesel tractor; a 1961 IHC Diesel tractor; a 1964 Kenworth tractor; a 1964 Wilson trailer; a 1961 Chamberlain trailer; a 1961 Chamberlain trailer; a 1960 Chamberlain trailer; a 1963 Chevrolet truck, and a 1965 Chevrolet station wagon. It appears from the stipulation that this equipment was all of the equipment used in Haley's business. An attached Limitation of Use Endorsement states that:

"In consideration of the premium at which the Policy designated above is issued, it is represented by the insured that no regular or frequent trips of commercial vehicles described in such Policy are or will be made during the policy period to any location beyond a . . . mile radius from the limits of the city or town of principal garaging of such vehicles."

The blank space in the Endorsement is filled in with numbers correlating the previously mentioned vehicles with specific radius limitations with the exception of the 1965 Chevrolet station wagon which was covered wherever driven. A seventy-five mile radius restriction was imposed upon the 1963 Chevrolet truck; a 150 mile limit was placed upon the 1964 Kenworth tractor, the 1958 IHC Diesel tractor, the two 1961 Chamberlain trailers, and the 1960 Chamberlain trailer; and a 500 mile prohibition was put upon the 1964 Wilson trailer and the 1961 IHC Diesel. The principal garages of the enterprise were stipulated to be Exira, Iowa.

The stipulation shows that on September 22, 1965, the 1964 Kenworth tractor with the 1964 Wilson trailer attached was being driven by the defendant C. H. Betterton to Tupelo, Mississippi. On that date, the rig was involved in a collision in Memphis, Tennessee. It is agreed that the distance by air to Memphis exceeds 500 miles from Exira, Iowa.

The stipulation states that during the period from July 11, 1965, the inception date of the policy, to September 22, 1965, the date of the accident, "the Defendant Michael E. Haley made approximately 400 trips of a local nature within the policy limitations of Plaintiff's policy of insurance but also made a total of at least 27 trips exceeding the radius limitations." The hauls made by Haley vehicles past the boundary limitations of the policy were the following: during the week beginning July 11, 1965, trips were made to Springfield, Missouri, Tupelo, Mississippi, and to Exira, Iowa from Texas; during the week beginning July 18, two trips were made to New Jersey; during the week beginning July 25, trips were made to New Jersey and Winnipeg, Canada; during the week beginning August 1, trips were made to Canada and to New Jersey; during the week beginning August 8, trips were made to Springfield, Missouri, and New Jersey; during the week beginning August 15, trips were made to Canada and New Jersey; during the week beginning Au-

gust 22, trips were made to Canada and Tupelo, Mississippi; during the week beginning August 29, a trip was made to Western Nebraska, a trip was made to central Minnesota, and two trips were made to New Jersey with one rig returning; during the week beginning September 5, trips were made to Regina, Canada, Gillette, Wyoming, and a return trip was made from New Jersey; during the week beginning September 12, one trip was made to Canada and two trips were made to New Jersey; and, finally, during the week beginning September 19, one trip was made to Springfield, Missouri, one trip was made to New Jersey, and one trip was made to Tupelo, Mississippi. On many of the return trips from points outside the policy radius restrictions, side trips were undertaken by the Haley vehicles.

The stipulation shows that a number of trips were made to North Bergan, New Jersey for the F. R. West Company of Omaha in 1965, and consisted of the transportation of hogs from Omaha to North Bergan. These trips were made on July 9, July 18, July 23, July 30, August 4, August 11, August 27, September 3, September 10, September 17, September 24, October 1, October 8, October 13, October 22, October 27, November 3, November 12, November 26, December 10, December 17, and December 23. From another part of the stipulation, it appears that an additional trip to North Bergan was made during the week of September 12.

From the stipulation, it appears that the Kenworth tractor-Wilson trailer combination made approximately forty-four local trips and nine journeys outside the policy area, including the trip on which the accident occurred. The plaintiff and the defendants Haley and Betterton are evidently under the impression that there were two trips to Winnipeg, Canada, during the week beginning August 1, but it would seem that there was only one trip with two days spent in reaching that destination. The Kenworth-Wilson outfit made the following trips beyond the radius restrictions during the two

and one-half month period: On July 30, 1965, a trip was made to Winnipeg, Canada; on August 10, a two day trip was made to Springfield, Missouri; on August 12, a two day trip was made to Springfield, Missouri; on August 20, a three day trip was made to Winnipeg, Canada; on August 24, a three day trip was made to Tupelo, Mississippi; on September 2, a two day trip was made to Kilgore, Nebraska; on September 5, a three day trip was made to Regina, Canada; on September 9, a three day trip was made to Gillette, Wyoming; and on September 21, the trip in question was made to Memphis, Tennessee.

The Stipulation further states that the Kenworth tractor was and is subject to first and second liens in favor of the defendant A.B.C. Loan Corporation. As of September 22, 1965, the total unpaid amount on the tractor was $8,383.50. Also, the Wilson trailer is subject to a first lien in favor of A.B.C. Loan Corporation. The costs of repairs to the Kenworth tractor and other items of expense totalled $8,867.59 and were made with funds advanced by the A.B.C. Loan Corporation.

At the request of defendant Michael Haley, the plaintiff issued a Loss Payable Clause which named "A.B.C. Finance" as an additional insured. The Stipulation states that A.B.C. Finance is non-existent and that the Clause should be considered by the Court as originally issued to A.B.C. Credit Corporation and the benefits of the Clause, if any, should be accorded to the A.B.C. Credit Corporation. The Clause relates in part that:

" . . . this insurance as to the interest of the . . . Mortgagee (herein called the Lienholder) shall not be invalidated by any act or neglect of the . . . Mortgagor . . ..

\* \* \* \* \* \*

Whenever the company shall pay the Lienholder any sum for loss or damage under such policy and shall claim that, as to the . . . Mortgagor . . . no liability therefor existed, the company shall, to the extent of such payment, be thereupon legally subrogated

to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the debt, or may at its option, pay to the Lienholder the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the Lienholder to recover the full amount of its claim."

Three primary issues have been framed for the Court's consideration: (1) Whether the phrase "regular or frequent trips" is ambiguous and whether its interpretation should be guided by parol evidence upon the intent of the parties; (2) Whether the Court should examine only the trips made by the 1964 Kenworth tractor and 1964 Wilson trailer or those made by the Haley fleet in determining whether the "regular or frequent" use provision was violated; and, (3) Whether the hauls made by the fleet or by the Kenworth-Wilson rig were sufficiently "regular or frequent" to merit avoidance of liability for and defense of any action against the defendants Haley and Betterton arising out of the accident of September 22, 1965.

■■ The first threshold dispute relates to whether the phrase "regular or frequent trips" is ambiguous so that it must be construed in the light of parol evidence as to its meaning, particularly certain statements made by plaintiff's agent, Fulkerson. The Limitation of Use Provision constituted a warranty and the defendants Haley and Betterton do not question its validity as such. It is a cardinal rule of construction that where there is an ambiguity or doubt as to the meaning of a warranty, it will be construed most strongly against the insurer, Providence Washington Ins. Co. v. Rabinowitz, 227 F.2d 300 (5 Cir.), and a warranty will not be extended to encompass anything not fairly within its terms. Service Life Ins. Co. of Omaha, Neb. v. McCullough, 234 Iowa 817, 13 N.W.2d 440, 153 A.L.R. 697.

■ An insurance company may be bound by the representations of its agent as to coverage where the terms are susceptible to two constructions but if the words are not equivocal, any interpretation placed upon them by an insurance agent cannot bind the company. See 16 Appleman, Insurance Law and Practice, Section 9168 (1944 ed.); Carr v. Iowa Mut. Tornado Ins. Ass'n, 242 Iowa 1084, 49 N.W.2d 498, 28 A.L.R.2d 751.

■ The Court does not feel that there is any room for judicial emasculation of the terms "regular" or "frequent." The ordinary man would have no difficulty in interpreting words of such common usage. "Regular," as used in the context of the policy in question, connotes a uniform or recurring course of action or conduct. The term "frequent" usually portrays the concept of " 'Often to be met with, happening at short intervals, often repeated or recurring, 'as frequent visits.' " Weaver v. National Fidelity Ins. Co., 377 S.W.2d 73, 75 (Ky.). Any ambiguities which could be said to be generated by the use of those terms in the policy derive from the fact that their inherent nature necessitates a factual consideration in each case to determine whether the use was "regular" or "frequent." Ambiguities in that sense have apparently led some authorities to approach the *factual application* of the terms to the manner and extent of use of a commercial vehicle in a liberal spirit. See, e. g., Weaver, supra; Indiana Rolling Mill Bailing Corp. v. National Automobile and Cas. Ins. Co., 141 F.Supp. 831 (D.Ind.), aff'd. 240 F.2d 74 (7 Cir.); Bruins v. Anderson, 73 S.D. 620, 47 N.W.2d 493. But no court has found that the terms themselves need clarification.

■ But assuming, arguendo, that the terms were deficient, the Court could not adopt the defendant Haley's construction of the Limited Use Endorsement. Mr. Haley testified that Mr. Fulkerson, the plaintiff's agent, told him that return trips with feeder cattle could be classified as "occasional" trips and that as long as he was hauling farm-to-market

cattle or return feeder cattle to local yards, it would be considered local business. He testified that such coverage would be applicable anywhere in the United States. Mr. Fulkerson stated that he did not define "occasional and frequent" or attempt to define "regular or frequent." He said that he gave as an example of an occasional trip a trip to Western Nebraska to get feeder cattle to bring back to the local forum.

The Stipulation relates that if called as a witness Haley would testify that Mr. Fulkerson called on him prior to the issuance of the policy and told him he thought he could save Haley some money in respect to insurance on his trucks. Mr. Haley's insurance was at that time carried with another company and limited the use of "one Chevrolet straight truck to 75 miles, another semi-truck to 300 miles, and all other vehicles to 500 miles from Exira, Iowa." The Stipulation provides that if Mr. Fulkerson were called as a witness he would testify that he quoted Haley a premium for the identical coverage then in force on Haley's vehicles. He would further testify that Haley stated that he was reducing his operations, and at Haley's request, Mr. Fulkerson quoted a lower premium on the policy in question which had a more restrictive Limitation of Use Endorsement.

The Stipulation shows that the annual premium which would have been charged by plaintiff for a policy with a limitation of use clause identical to the one in the prior policy would have been $5,357.-00. The premium on the policy in question was $4,102.22. The Stipulation states that "Plaintiff's policy issued to the Defendant, Michael E. Haley, resulted in a lower premium charge than he had been paying another insurance carrier prior to July 11, 1965." It will be recalled that the Limitation of Use Endorsement in question is much more restrictive than the one present in his former policy. Finally, it was stipulated that "The provisions of the Limitation of Use Endorsement were known to the Defendant Michael E. Haley when said

policy became effective on July 11, 1965, for a one year period."

It would seem incredible that the defendant Haley could maintain a belief that all farm-to-market or return feeder cattle trips from beyond the radius limits, no matter how regular or frequent, would be covered by the policy. He had knowledge of the terms of the Endorsement which are clear and distinct. He must have known that the policy was more restrictive than his previous policy and for that reason his premium was reduced. These conclusions are borne out by Mr. Fulkerson's stipulated testimony that the reduced premium on the policy in question was a more restrictive endorsement was quoted in response to Haley's request. Moreover, the defendant's own testimony demonstrates his disregard for the policy restrictions. He said he thought he had coverage anywhere in the United States and yet the Stipulation shows that on six different occasions his trucks were directed to Canada.

The second preliminary conflict relates to the scope of the Court's examination of whether there has been a violation of the "regular or frequent" use provision. The defendants Haley and Betterton assert that the Court should confine its inquiry in this regard to the business conducted by the 1964 Kenworth tractor and the 1964 Wilson trailer and should not review the activities of the fleet. They quote the following policy provision in support of their contention:

"(d) *Two or More Automobiles.* When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each, but a motor vehicle and a trailer or trailers attached thereto shall be held to be one automobile as respects limits of liability under coverages A and B and separate automobiles as respects limits of liability, including any deductible provisions, under coverages D, E, F, G, H, I and J."

Coverages A and B give protection to the insured against bodily injury and property damage liabilities. The remaining coverages specified in the above pro-

vision relate to losses sustained and expenses incurred by insured vehicles.

■■ The Court cannot agree that its scrutiny is limited to only the trips made by the Kenworth-Wilson combination. In Loerzel v. American Fidelity Fire Ins. Co., 204 Misc. 115, 120 N.Y.S. 2d 159, 162, aff'd. 281 App.Div. 735, 118 N.Y.S.2d 180, it was observed that "the purpose of the fleet policy is to cover several vehicles and to provide for such coverage in *one policy* rather than to require the issuance of a separate policy for each vehicle." (Emphasis added.) Policies of this type constitute one contract. Government Employees Ins. Co. v. Lally, 327 F.2d 568 (4 Cir.); Polland v. All State Ins. Co., 25 A.D.2d 16, 266 N.Y.S.2d 286.

■ The Court in the Polland case on p. 287 succinctly explained the provision in question herein:

"In our view Condition '3' which provides that 'when two or more automobiles are insured by this policy, the terms of the policy shall apply separately to each * * *' means nothing more than to render applicable the policy to *whichever car* insured under the policy (The Thunderbird or the Volkswagen) is involved in an accident * * *." (Emphasis added.)

The provision cited by the defendants does not mean that each vehicle is to be treated in all respects as though insured under a separate policy of insurance and was not intended to affect the question of a policy violation avoiding liability. That was the function of the Limited Use Endorsement.

The Limited Use Endorsement itself shows that the parties intended a single contract and that "regular or frequent trips" by the fleet would be a contravention thereof. It declares in part that:

"In consideration of *the premium* at which *the* policy is issued, it is represented that no regular or frequent trips of commercial *vehicles* * * * are or will be made. * * *" (Emphasis added.)

■ Further, the risk to the insurance company from operations outside the radius prohibitions is not separable. See Taylor v. Anchor Mut. Fire Ins. Co., 116 Iowa 625, 88 N.W. 807, 57 L.R.A. 328; Garver v. Hawkeye Ins. Co., 69 Iowa 202, 28 N.W. 555; Diesinger v. American & Foreign Ins. Co., 138 F.2d 91 (3 Cir.); Lee v. Travelers Fire Ins. Co., 219 La. 587, 53 So.2d 692. The manifest purpose of the Endorsement is to provide the Company and prospective customer with a crude device by which the insurer can reduce the owner's premium by a rough estimation of the mileage which will be traveled by his trucks. Cf. Indiana Rolling Mill Bailing Corp. v. National Auto. and Cas. Co., 141 F. Supp. 831 (D.Ind.), aff'd. 240 F.2d 74 (7 Cir.); Wallace v. Virginia Surety Co., Inc., 80 Ga.App. 50, 55 S.E.2d 259. By the insertion of radius limitations, the mileage consumed by over-the-road Long distance hauls is diminished. The Stipulation relates that:

"In computing the premium to be charged for policies of the type involved in this action the Plaintiff, like all other insurance companies, bases its charge on the risk involved and on the underwriting principle that the longer the trip and the greater number of miles involved, the greater the risk. A lower premium charge is therefore made on policies issued with a Limitation of Use Endorsement."

Therefore, the contractual provision quoted by defendants means simply that the policy coverage is applicable to *whichever* unit or units are involved in an accident. That provision did not make the policy divisible and was not meant to control the question of a policy violation under the Limited Use Endorsement. On the contrary, the policy is not severable on this matter and the activities of all insured vehicles are inextricably interwoven in the risk insured against by the Company. The Court might add that in the Weaver case, supra, the total trips made by the insured's two trucks were viewed in relation to the question of whether frequent trips had been made in

contravention of a limited use endorsement.

The Court now reaches the true issue of whether the defendant Haley made "regular or frequent trips" in breach of the Limitation of Use Endorsement. The terms "regular" and "frequent" have previously been defined. The Court of Appeals for the Fifth Circuit in Pennsylvania Cas. Co. v. McCoy, 167 F.2d 132, 133 (5 Cir.) elaborated some factors which the Court deems helpful in the analysis of the facts in the case at hand:

"The term 'regular' and the term 'frequent' is each a relative term, depending upon the facts and circumstances. For instance, a fast-moving, lightly-loaded automobile is capable of making more frequent trips than a slow-moving, heavily-laden one, and what would be frequent trips for the latter might not be considered so frequent for the former vehicle. The distances of the trips would also enter into the question of frequency. Regularity might encompass the idea of a fixed time of departure and return—the idea of a regular run or schedule."

The trips taken by Haley trucks as a whole were both "regular" and "frequent." It was stipulated that from July 11 to September 22, 1965, 400 trips of a local nature were made, and at least twenty-seven trips were made beyond the radius limitations. Of the twenty-seven, nine or possibly ten were made from Omaha, Nebraska to North Bergan, New Jersey, transporting hogs for the F. R. West Company of Omaha. Twelve such trips were listed from September 21 through December 23 but the Court does not deem these trips relevant as to whether the plaintiff should avoid responsibility for the accident on September 22. The regular pattern of the trips for the F. R. West Company to New Jersey is evidenced by the rather consistent intervals between the journeys. See Indiana Rolling Mill Bailing Corp., supra. The daily interludes were: nine days, five days, seven days, five days, seven days, sixteen days, seven days, seven days, and seven days. The sixteen day period does not reflect one trip to New Jersey listed during that time in another portion of the Stipulation. Further regular trips may have been made to other areas but the Court is not impelled to go further. Baldwin v. Tri-State Cas. Ins. Co., 55 So.2d 43 (Ct.App.La.).

The trips made by Haley's equipment outside the radius restrictions were "frequent" as well. Although the numerical percentage of such trips was only approximately 7%, the Court views the proper measures of frequency to be those set out in the McCoy case. Until the latter part of August, at least two trips a week were made outside the policy boundaries. From the latter part of August through September 21, three or four trips per week were made. See Weaver, supra. Live hogs and feeder cattle were hauled on many of the trips.

The amount of time expended upon trips past the radius borders set out in the Endorsement by the Chevrolet truck and three tractors with trailers attached must have been considerable. The Court takes judicial notice of the distances of these destinations from Exira, Iowa. See 9 Wigmore on Evidence, Section 2581 (1940 ed.). Without including the numerous divergences from direct routes to North Bergan, those trips account for nearly 22,000 miles in the two and one-half month period. Six trips to Canada would be a minimum of 8,400 miles. Trips to Tupelo, Mississippi, and Memphis, Tennessee, would in aggregate be an estimated 2,175 miles. Trips to Kilgore, Nebraska, central Minnesota, Springfield, Missouri, and Gillette, Wyoming, would add 4,850 miles. The return trip from Texas was about 650 miles. The minimum mileage for the two and one-half month period is approximately 38,500 miles and some mileage was undoubtedly added by numerous deviations on return trips.

If the Court were to assume that the argument of defendants Haley and Betterton that it should explore only the trips made by the Kenworth tractor and Wilson trailer had merit, it would still

be constrained to hold that plaintiff is entitled to avoid liability. The Kenworth-Wilson combination made "frequent" hauls outside the geographical limits of the policy. Nine such journeys were made in a sequence of the following daily intervals: eleven days, two days, eight days, four days, seven days, three days, four days, and twelve days. The percentage of these trips of the total trips taken by the combination is about 17%. See Weaver, supra; Baldwin, supra.

The time devoted to the nine hauls is proportionally great. At least twenty-one days, and probably twenty-three days, of the seventy-three days that the policy was in effect before the accident were spent in relation to those commercial ventures. The total approximate mileage of the nine trips is 10,300 miles.

It would further appear that there may have been some regularity in the questionable trips during the relatively short two and one-half month period. However, a liberal construction must inure to the benefit of the insured and the Court does not feel the evidence to be sufficient on this point.

The defendant Haley has cited several cases as controlling precedent for the case at hand. The case of Bruins v. Anderson, 73 S.D. 620, 47 N.W.2d 493, is given great weight by the defendant. The Court does not find that case persuasive upon the result to be reached herein. The policy in that case imposed a fifty mile radius restriction upon the "regular and frequent use" of the insured's truck. The insured had made trips to a point fifty-three miles from the place of principal garaging and another locale which is a "greater distance" from the principal garages. The insured's trips to both places were "not many" and "more than" ninety percent of his trucking was "in and around" the city in which the truck was garaged.

The distinguishing features of the Bruins case must be quite apparent by now. The "regular" *and* "frequent" use of the insured's truck past the radius area was forbidden. The trips past the radius limitation accounted for negligible mileage in comparison with the case at bar and "more than" ninety percent of the trips were made in the proximity of the place of principal garaging. It is not clear how many such trips were made.

The defendant Haley can gain no comfort from the McCoy case, supra. That case is clearly distinguishable from the case at hand. The Court of Appeals held that the lower Court's opinion that the insured's use was not regular and frequent was not "clearly wrong." From the lower Court opinion entitled McCoy v. Elliot, 72 F.Supp. 790 (D.Fla.), it appears that the truck in question was garaged at Laurel, Delaware and the policy limited regular and frequent use to a 500 mile radius. In early November of 1943, the defendant's son went to Florida to purchase vegetables for northern commission houses and the defendant sent the truck to transport any vegetables procured. Between early November and December 10, the truck made two trips to Florida and was on its third and *final* trip when the accident occurred in Florida. The lower Court explicitly held at p. 790 that it had "given consideration to these cases and follows the cases holding that a *limited use* of the truck by defendant in sending it to Florida did not void the policy." (Emphasis added.) It is obvious that the Court properly considered the three trips in light of the isolated objective of conveying vegetable purchases secured during the single buying venture. There was no continuity of business outside of the territorial limits such as there is in the case at bar.

The defendants Haley and Betterton cite the case of E. D. Baird & Son v. Kaskaskia Live Stock Insurance Co., 198 Iowa 905, 200 N.W. 575, for the proposition that a condition or stipulation in an insurance contract making the policy void before a loss occurs cannot prevent recovery unless it is shown that a violation of the condition contributed to the loss. The correct statement of the rule is that breach of a condition must be shown to have contributed to

the loss or in fact made the risk more hazardous. Taylor v. National Livestock Co., 192 Iowa 1118, 185 N.W. 992; Kinney v. Farmers' Mutual Fire & Ins. Soc. of Kiron, Iowa, 159 Iowa 490, 141 N.W. 706. There can be no doubt that Haley's breach of the Limitation of Use Endorsement increased the risk for the Company. In the event the Court were to decide otherwise, a universally legal and valid fleet policy clause would be rendered nugatory.

For the foregoing reasons, it will be ordered that the policy affords no coverage to Michael E. Haley and the plaintiff is not liable for any property loss incurred by him arising out of the accident on September 22, 1965.

It will further be ordered that the policy affords no coverage and that plaintiff is not required to defend the defendants Michael E. Haley or C. H. Betterton or to pay any judgment rendered against them in any action arising out of the said accident.

There is no serious contention by the plaintiff that the Loss Payable Clause does not render it accountable to the A.B.C. Credit Corporation for its loss to the extent of the debt owing by Haley. Such recovery is proper under this standard type of mortgage clause. The debt was stipulated to be $8,383.50 as of September 22, 1965. Similarly, the defendant Haley does not contest plaintiff's right to subrogation under the Clause. Therefore, it will be ordered that the A.B.C. Credit Corporation is entitled to judgment against plaintiff in the amount of $8,383.50 plus interest at five percent per annum from September 22, 1965. It will further be ordered that upon payment by plaintiff of the judgment to the A.B.C. Credit Corporation, the plaintiff will succeed to the lien rights held by the A.B.C. Credit Corporation as of the date of the accident to the extent of $8,383.50.

It is ordered that the foregoing shall constitute the findings of fact, conclusions of law, and Order for Judgment in this case. Rule 52(a) of the Federal Rules of Civil Procedure.